# United States Court of Appeals
## For the First Circuit

No. 18-1773

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO SALES TAX FINANCING CORPORATION, a/k/a Cofina; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,

Debtors.

---

CARLOS MÉNDEZ-NÚÑEZ, in his official capacity and on behalf of the House of Representatives of Puerto Rico,

Plaintiff, Appellant,

THOMAS RIVERA-SCHATZ, in his official capacity and on behalf of the Senate of Puerto Rico,

Plaintiff,

v.

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; JOSE B. CARRION, III; ANDREW G. BIGGS; CARLOS M. GARCIA; ARTHUR J. GONZALEZ; JOSE R. GONZALEZ; ANA J. MATOSANTOS; DAVID A. SKEEL, JR.; NATALIE A. JARESKO,

Defendants, Appellees,

COMMONWEALTH OF PUERTO RICO; PUERTO RICO SALES TAX FINANCING CORPORATION, a/k/a Cofina; PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY; EMPLOYEES RETIREMENT SYSTEM OF THE

GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO; PUERTO RICO
ELECTRIC POWER AUTHORITY (PREPA),

Debtors, Appellees.

---

No. 18-1777

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO
RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION
AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC
POWER AUTHORITY (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO
SALES TAX FINANCING CORPORATION, a/k/a Cofina; THE FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,

Debtors.

---

THOMAS RIVERA-SCHATZ, in his official capacity and on behalf of
the Senate of Puerto Rico,

Plaintiff, Appellant,

CARLOS MÉNDEZ-NÚÑEZ, in his official capacity and on behalf of
the House of Representatives of Puerto Rico,

Plaintiff,

v.

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO;
JOSE B. CARRION, III; ANDREW G. BIGGS; CARLOS M. GARCIA; ARTHUR
J. GONZALEZ; JOSE R. GONZALEZ; ANA J. MATOSANTOS; DAVID A.
SKEEL, JR.; NATALIE A. JARESKO,

Defendants, Appellees,

COMMONWEALTH OF PUERTO RICO; PUERTO RICO SALES TAX FINANCING
CORPORATION, a/k/a Cofina; PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY; EMPLOYEES RETIREMENT SYSTEM OF THE

GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO; PUERTO RICO
ELECTRIC POWER AUTHORITY (PREPA),

Debtors, Appellees.

———————

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Laura Taylor Swain,* U.S. District Judge]

———————

Before

Lynch, Circuit Judge,
Souter,** Associate Justice,
and Stahl, Circuit Judge.

———————

Israel Roldán-González for Carlos Méndez-Núñez.
Claudio Aliff-Ortiz, with whom Eliezer Aldarondo-Ortiz,
Sheila Torres-Delgado, David Rodríguez-Burns, and Aldarondo &
López Bras ALB, were on brief for Thomas Rivera-Schatz.
Timothy W. Mungovan, with whom John E. Roberts, Guy Brenner,
Martin J. Bienenstock, Steven L. Ratner, Mark D. Harris, Kevin J.
Perra, and Proskauer Rose LLP, were on brief, for the Financial
Oversight and Management Board for Puerto Rico; Jose B. Carrion,
III; Andrew G. Biggs; Carlos M. Garcia; Arthur J. Gonzalez; Jose
R. Gonzalez; Ana J. Matosantos; David A. Skeel, Jr.; Natalie A.
Jaresko.

———————

February 22, 2019

———————

* Of the Southern District of New York, sitting by designation.

** Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**LYNCH**, **Circuit Judge**.   These appeals raise several questions about the authority, under the Puerto Rico Oversight, Management and Economic Stability Act (PROMESA), of the Financial Oversight and Management Board for Puerto Rico to develop and certify Fiscal Plans and Territory Budgets for the Commonwealth. 48 U.S.C. §§ 2141-2142.   In particular, this case is about the 2019 Fiscal Plan and Territory Budget.

The plaintiffs, the Speaker of Puerto Rico's House of Representatives, Carlos Méndez-Núñez, and the President of its Senate, Thomas Rivera-Schatz, in their official capacities and on behalf of the Legislative Assembly, sued the Board, its members, and its executive director after the Board developed and certified a Fiscal Plan and a Territory Budget for Fiscal Year 2019.   The complaint alleged that the Board had made several erroneous certification decisions and had exceeded its power under PROMESA during the Fiscal Plan and Territory Budget development and certification processes.   It sought declaratory and injunctive relief.   The district court dismissed the complaint, in part for lack of subject matter jurisdiction and in part for failure to state a claim.   See Rivera-Schatz v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 327 F. Supp. 3d 364 (D.P.R. 2018).   We affirm the dismissal on the same grounds.

- 4 -

I.

We describe the statutory context and the relevant events surrounding the 2019 Fiscal Plan and Territory Budget.[1]

A.   PROMESA's Basic Structure

Finding Puerto Rico to be amid a "fiscal emergency," Congress enacted PROMESA in 2016. See Pub. L. No. 114-187 § 405(m)(1), 130 Stat. 549, 591 (2016); see also Aurelius Inv., LLC v. Commonwealth of P.R., Nos. 18-1671, 18-1746, 18-1787, 2019 WL 642328, at *1-2 (1st Cir. Feb. 15, 2019) (recounting the origins of the emergency and the responses before PROMESA). PROMESA created mechanisms for restructuring the debts of U.S. territories and for overseeing reforms of their fiscal and economic policies. See 48 U.S.C. § 2121(a) (stating this purpose). The Board, established "as an entity within the territorial government" of Puerto Rico, id. § 2121(c)(1), was empowered by PROMESA to, among other things, develop, approve, and certify Fiscal Plans and Territory Budgets, id. §§ 2141-2142, negotiate with the Commonwealth's creditors, id. § 2146, and, under Title III, to commence a bankruptcy-type proceeding on behalf of the Commonwealth, id. § 2175; see generally Aurelius Inv., 2019 WL

---

[1]   Because the complaint was disposed of at the motion to dismiss stage, we take the facts from the complaint, its attachments, and the motion to dismiss and its attachments. See, e.g., In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 14-15 (1st Cir. 2003). There are no material disputes about this record.

642328, at *2-3, *11-12 (outlining key powers granted to the Board).

Congress enacted PROMESA under its Article IV "Power to dispose of and make all needful Rules and Regulations respecting the Territory . . . belonging to the United States." U.S. Const. art. IV § 3, cl. 2; see 48 U.S.C. § 2121(b)(2). Puerto Rico became a U.S. territory in 1898, see Treaty of Paris, art. 9, Dec. 10, 1898, 30 Stat. 1759, and is governed by a popularly elected Governor and Legislative Assembly under a constitution adopted by Puerto Rico and approved by Congress under the Territorial Clause, see Act of July 3, 1952, Pub. L. No. 447, ch. 567, 66 Stat. 327; see also Puerto Rico v. Sanchez Valle, 136 S. Ct. 1863, 1875 (2016) (recognizing the congressional role in authorizing Puerto Rico's "constitution-making process" and in approving the resulting Constitution).

PROMESA explicitly reserves "the power of [Puerto Rico] to control, by legislation or otherwise, the territory," except as that power is limited by Titles I and II of PROMESA. 48 U.S.C. § 2163. In addition to that exception, PROMESA's provisions preempt any inconsistent "general or specific provisions of territory law," including provisions of Puerto Rico's Constitution. See id. § 2103; see also United States v. Maldonado-Burgos, 844 F.3d 339, 346 (1st Cir. 2016) (citing United States v. Quinones, 758 F.2d 40 (1st Cir. 1985) and then citing United States

- 6 -

v. Acosta-Martinez, 252 F.3d 13, 18 (1st Cir. 2001)) ("[A] provision of the Puerto Rico Constitution cannot prevail where it conflicts with applicable federal law.").

We have previously had occasion to interpret aspects of PROMESA's Title III. See Fin. Oversight & Mgmt. Bd. for P.R. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd. for P.R.), 899 F.3d 13, 18 (1st Cir. 2018); Peaje Invs. LLC v. García-Padilla, 845 F.3d 505, 511 (1st Cir. 2017); Lex Claims, LLC v. Fin. Oversight & Mgmt. Bd., 853 F.3d 548, 552 (1st Cir. 2017); see also Altair Glob. Credit Opportunities Fund, LLC v. The Emps. Ret. Sys. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 914 F.3d 694, 707 (1st Cir. 2019) (noting PROMESA's enactment). Recently, in Aurelius Investment, LLC v. Commonwealth of Puerto Rico, 2019 WL 642328, at *1, this court considered the constitutionality of PROMESA's procedure for appointing Board members, see 48 U.S.C. § 2121(e). Aurelius' holding that this procedure violates the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, has no effect on the "otherwise valid actions of the Board prior to the issuance of [Aurelius'] mandate," and so does not impact the outcome of these appeals, Aurelius Inv., 2019 WL 642328, at *17.

At issue here are events that occurred in 2018 and questions of first impression about Title II's provisions related to Fiscal Plans and Territory Budgets. 48 U.S.C. §§ 2141-2142. We explain those provisions in greater detail below.

B.    2019 Fiscal Plan

Congress intended for Fiscal Plans to provide roadmaps for Puerto Rico "to achieve fiscal responsibility and access to the capital markets."  Id. § 2141(b)(1).  PROMESA § 201 grants the Board exclusive authority to review, approve, and certify these Plans.[2]  See id. § 2141(c)-(e); cf. Aurelius Inv., 2019 WL 642328, at *12 (describing these and related powers and characterizing them as "significant").  That section also outlines a yearly process, involving only the Governor and the Board, for development of Fiscal Plans.  See generally 48 U.S.C. § 2141.  The Legislative Assembly has a formal role in economic planning and budgeting under PROMESA, but that role is limited to the Territory Budget development process.  See id. § 2142(d).

------

[2]    PROMESA does provide one path for the Governor and the Board to jointly develop and certify Fiscal Plans "that meet[] the requirements under [§ 201]."  48 U.S.C. § 2141(f).  The full provision reads:

> (f) Joint development of Fiscal Plan
> Notwithstanding any other provision of this section, if the Governor and the Oversight Board jointly develop a Fiscal Plan for the fiscal year that meets the requirements under this section, and that the Governor and the Oversight Board certify that the fiscal plan reflects a consensus between the Governor and the Oversight Board, then such Fiscal Plan shall serve as the Fiscal Plan for the territory or territorial instrumentality for that fiscal year.

Id.

1.   Initial Development

PROMESA's prescribed process for "[d]evelopment, review, approval, and certification of Fiscal Plans" occurs on a schedule set by the Board, id. § 2141(c); see id. § 2141(a), and begins with the submission of a proposed Fiscal Plan by the Governor, see id. § 2141(c) ("The Governor shall submit to the Oversight Board any proposed Fiscal Plan . . . ."). For 2019, the Governor sent several versions of his proposed Fiscal Plan to the Board between January and April 2018.

The Board reviewed each of these proposals, as required by § 201(c)(3), which states that "[t]he Oversight Board shall review any proposed Fiscal Plan to determine whether it satisfies the requirements set forth in subsection (b)." Id. § 2141(c)(3). Contained in subsection (b) are over a dozen specific requirements. Those include "provid[ing] for the elimination of structural deficits" and "for the investments necessary to promote economic growth." Id. § 2141(b)(1)(A)-(N).[3]

---

[3]   The requirements "set forth in" § 201(b) are:

(A) provide for estimates of revenues and expenditures in conformance with agreed accounting standards and be based on --
     (i) applicable laws; or
     (ii) specific bills that require enactment in order to reasonably achieve the projections of the Fiscal Plan;
(B) ensure the funding of essential public services;
(C) provide adequate funding for public pension systems;

Here, the Board rejected each of the Governor's proposed 2019 Fiscal Plans as not satisfying § 201(b)'s requirements.[4] The

(D) provide for the elimination of structural deficits;
(E) for fiscal years covered by a Fiscal Plan in which a stay under subchapters III or IV is not effective, provide for a debt burden that is sustainable;
(F) improve fiscal governance, accountability, and internal controls;
(G) enable the achievement of fiscal targets;
(H) create independent forecasts of revenue for the period covered by the Fiscal Plan;
(I) include a debt sustainability analysis;
(J) provide for capital expenditures and investments necessary to promote economic growth;
(K) adopt appropriate recommendations submitted by the Oversight Board under section 2145(a) of this title;
(L) include such additional information as the Oversight Board deems necessary;
(M) ensure that assets, funds, or resources of a territorial instrumentality are not loaned to, transferred to, or otherwise used for the benefit of a covered territory or another covered territorial instrumentality of a covered territory, unless permitted by the constitution of the territory, an approved plan of adjustment under subchapter III, or a Qualifying Modification approved under subchapter VI; and
(N) respect the relative lawful priorities or lawful liens, as may be applicable, in the constitution, other laws, or agreements of a covered territory or covered territorial instrumentality in effect prior to June 30, 2016.

48 U.S.C. § 2141(b)(1).

[4] If the Board had determined that one of the Fiscal Plans proposed by the Governor did "satisf[y] such requirements, the

Board returned two of the Governor's proposals to him, as required by § 201(c)(3)(B), with "a notice of violation that includes recommendations for revisions to the applicable Fiscal Plan; and . . . an opportunity to correct the violation." Id. § 2141(c)(3)(B). At the time the Board rejected the Governor's final, April 2018, proposal, the deadline for certifying a 2019 Fiscal Plan had passed. Under such circumstances (that is, when "the Governor fails to submit to the Oversight Board a Fiscal Plan that the Oversight Board determines in its sole discretion satisfies the requirements . . . by the time specified"), PROMESA § 201(d)(2) provides that "the Oversight Board shall develop and submit to the Governor and the Legislature a Fiscal Plan that satisfies the requirements." Id. § 2141(d)(2).

    2.    April 19, 2018 Fiscal Plan

        On April 19, 2018, the Board accordingly certified a 2019 Fiscal Plan that it had developed. That Fiscal Plan was automatically "deemed approved by the Governor" under § 201(e)(2). See id. § 2141(e)(2) ("If the Oversight Board develops a Fiscal Plan under subsection (d)(2), such Fiscal Plan shall be deemed approved by the Governor . . . .").

        The April Fiscal Plan incorporated many aspects of the Governor's proposed Fiscal Plan. It also included a labor reform

_____

Oversight Board" would have been required to "approve" and certify that proposed Fiscal Plan. Id. § 2141(c)(3)(A), (e)(1).

- 11 -

package not proposed by the Governor.  This was one among a set of "comprehensive structural reforms to the economy of Puerto Rico" set forth in the Plan.  These comprehensive reforms, to Puerto Rico's labor laws, business regulations, and infrastructure (among other areas), were designed by the Board to "revers[e] the negative trend [of economic] growth over the last 10 years and enabl[e] the Island to become a vibrant and productive economy going forward."

"[I]ncreasing labor force participation may be the single most important reform for long-term economic well-being in Puerto Rico," the April Plan stated.  It identified three "labor market reforms" intended "[t]o reduce the cost to hire and encourage job creation, including movement of informal jobs to the formal economy."  The three "initiatives to change labor conditions" were: a shift to at-will employment; a "[r]eduction of mandated paid leave, including sick leave and vacation pay;" and an end to "mandated Christmas bonuses."  The called-for adoption of at-will employment required the repeal of Puerto Rico's Law No. 80 of May 30, 1976, P.R. Laws Ann. tit 29 §§ 185a-185m, which bars termination of many private-sector employees without cause.

As to this first reform, the Plan noted that "49 out of 50 U.S. states are employment at-will jurisdictions, giving employers the flexibility to dismiss an employee without having to first prove just cause."  It acknowledged that "some employees benefit from Puerto Rico's lack of at-will employment" but credited

evidence that for-cause employment "makes it more costly and risky not only to dismiss, but also to hire, an employee." "For example," the Plan summarized, "studies have found that laws preventing unfair dismissal caused reductions in employment, particularly in labor-intensive industries." It concluded that switching to at-will employment "will lower the cost and risk of hiring in Puerto Rico."

The Plan quantified the impact of the labor reform package on the Commonwealth's annual budget surplus over thirty years. It projected that, with the adoption of at-will employment, Puerto Rico would have a $39 billion cumulative surplus over that period, compared with a $2 billion cumulative surplus without the enactment of at-will employment.

The April Fiscal Plan also cut the operating budget of the Puerto Rican Legislative Assembly. These "reductions for the Legislative Assembly" were "informed by benchmarking against other full-time legislatures" in the United States, the Plan explained. The Puerto Rican Legislative Assembly's expenditure in Fiscal Year 2018 was about 300% greater than the (population-weighted) national average of full-time U.S. legislatures, according to an analysis by the Board of publicly available data.[5] The Plan stated

_____

[5] This analysis appeared in the Board's motion to dismiss.

- 13 -

that these reductions would achieve "reinvestment savings" of between $23.6 and $25 million per year for the next five years.

3.   May 30, 2018 Fiscal Plan

The Governor and the Board continued negotiating about the labor reform package and other matters after the April Fiscal Plan had been certified.  Eventually, the Board agreed to certify a revised Fiscal Plan that it had developed.  It did so on May 30, 2018.  Two aspects of the Board's May Fiscal Plan are relevant to these appeals.

First, the May Fiscal Plan provided for a shift to at-will employment.  Specifically:

> The Legislature shall introduce and the Governor shall sign a bill that repeals Act No. 80 . . . on or before June 27, 2018, which shall become effective on or before January 1, 2019. . . .  The Bill shall state that, for the avoidance of doubt, an employee hired for an indefinite period of time does not have a cause of action against their employer merely for the employer's termination of the employment relation.

That is, the government of Puerto Rico would repeal Law 80 and clarify that employment is at will.

Second, the cut to the Legislative Assembly's budget was removed from the May version of the Fiscal Plan.  In addition, cuts to the budget of the judiciary included in the April Fiscal Plan were "reduced by half each year" in the May version, a change that increased the court system's budget by up to $23 million per

year over what had been budgeted in the April version. According to a statement of understanding between the Governor and the Board, these operating budgets were to "be revisited annually," and these funding levels were made contingent on Puerto Rico's "compliance with the then-applicable fiscal plan." That is, the May Fiscal Plan stated that the allocations for the Legislative Assembly and the judiciary

> are pursuant to Puerto Rico becoming an employment at-will jurisdiction by repealing Law 80 of May 30, 1976 on or before June 27, 2018 . . . . If the repeal does not occur, none of these changes and alterations [to the Legislative Assembly's and the judiciary's budgets] shall be implemented.

The Legislative Assembly did not repeal Law 80. Instead, the day the Board certified the May Fiscal Plan, May 30, Puerto Rico's Senate passed Senate Bill 1011, which made at-will employment the rule for employees hired after the date of the bill's enactment, while retaining Law 80's for-cause rule for those already employed.[6]

The House of Representatives immediately began considering Senate Bill 1011. Recognizing that the bill did not

---

[6] The Senate also studied a labor reform bill that the Board had drafted based on the April Fiscal Plan. Based on testimony from experts and a review of studies, a Senate committee penned a report in July 2018 rejecting the proposed bill and stating that the bill's reforms, including at-will employment, "have not had a positive or significant impact in [other] economies where similar . . . reforms have been implemented."

fully repeal Law 80, the President of the House Government Affairs Committee sent a letter to the Board asking about the "effect on the Fiscal Plan and the budget to be certified by the Financial Oversight Board" were the House to pass Senate Bill 1011. The Board responded that same day, June 4, that, if the Legislative Assembly "fails to comply exactly with the understanding reached with the Oversight Board concerning the repeal of Law 80, the Oversight Board will amend the Fiscal Plan and Budget to," among other things, "[m]aintain the cuts to the budgets of the Legislature and Judiciary as outlined in the April 19 Fiscal Plan." Ten days later, on June 14, the House passed Senate Bill 1011. The parties agree that Senate Bill 1011 never became law; the record does not explain why.

4.    June 29, 2018 Fiscal Plan

On June 29, 2018, the Board informed the Governor and the Legislative Assembly by letter that it was certifying a new Fiscal Plan. As had been promised in the May Fiscal Plan and in the Board's June 4 letter, the Board's June Fiscal Plan funded the judiciary and the Legislative Assembly at the levels stated in the April Plan. The letter explained, "Unfortunately, we now know that the Government of Puerto Rico will not implement the [May] Fiscal Plan in full because the Legislature . . . failed to pass the most important component of the Labor Reform Package -- the

repeal of Law 80 and turning Puerto Rico into an at-will employment jurisdiction."

The labor reform package was absent from the Board's June Fiscal Plan, certified June 29, 2018. On that subject, the June Plan stated the following:

> [W]hile successful human capital and welfare reforms would have been projected to generate approximately $39 billion in additional revenues by FY2048 and over ~$320 million from FY2018-FY2023, the Legislature's demonstrated noncompliance with the comprehensive labor reform requirements of previous fiscal plans has forced the removal of these projected revenues from the New Fiscal Plan.

C.   2019 Territory Budget

PROMESA § 202 grants the Board exclusive authority to review, approve, and certify Territory Budgets. See 48 U.S.C. § 2142; see also Aurelius Inv., 2019 WL 642328, at *12 (recognizing the Board's "significant" power to approve and reject Commonwealth budgets). The Legislative Assembly's only responsibility under § 202 is to "submit to the Oversight Board the Territory Budget adopted by the Legislature." 48 U.S.C. § 2142(d)(1).

For 2019, the Legislative Assembly did this on June 30, 2018, the day before the start of the Fiscal Year. Earlier that day, the Legislature had approved an $8,708,623,000 Commonwealth budget (which the Governor later signed).

Also on June 30, the Board determined that the Legislative Assembly's Budget was non-compliant with the

Board-certified June Fiscal Plan.[7]   The Legislative Assembly's $84,275,000 combined allocation for Puerto Rico's House of Representatives ($45,470,000) and Senate ($38,805,000) matched the budget for the Legislative Assembly under the Board's May Fiscal Plan but exceeded the reduced allocation in the June Plan.

The Board then immediately certified a Territory Budget it had developed totaling $8,757,524,000.  Of this, and consistent with the June Fiscal Plan, $65,292,000 was allocated to the Legislative Assembly ($35,228,000 to the House and $30,064,000 to the Senate).  In developing and certifying this Budget, the Board relied on its authority under § 202(e)(3).   That provision provides:

> If the Governor and the Legislature fail to develop and approve a Territory Budget that is a compliant budget by the day before the first day of the fiscal year for which the Territory Budget is being developed, the Oversight Board shall submit a Budget to the Governor and the Legislature . . . and such Budget shall be --
> (A) deemed to be approved by the Governor and the Legislature; . . .
> (C) in full force and effect beginning on the first day of the applicable fiscal year.

---

[7]   If the Board had deemed this "adopted Territory Budget" to be compliant with the Fiscal Plan, then the Oversight Board would have been required to "issue a compliance certification for such compliant budget."  48 U.S.C. § 2142(d)(1)(A).

Id. § 2142(e)(3).[8]  By operation of law, then, the Board's 2019 Territory Budget went into effect.

D.   Procedural History

On July 9, plaintiffs filed their complaint against the Board seeking the following relief:[9] (1) a declaration "that the rejected policy recommendations in the Fiscal Plan are non-binding recommendations, and that the Legislative Assembly cannot be compelled to implement any of those policies, and the [Board] may not take any actions to force compliance with such recommendations;" (2) a declaration that the Territory Budget certified by the Board "is null and void;" and (3) an injunction "prohibiting the defendants from implementing and enforcing" the Board-developed and certified Budget and "reinstat[ing]" the Budget adopted by the Legislative Assembly.  We describe the pled theories for relief in the analysis.

Defendants moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim to relief, and the district court granted the motion.  Rivera-Schatz,

---

[8]     Had these events occurred before "the day before the first day of the fiscal year" and had the Board determined that the submitted Budget was not compliant, then PROMESA says that "the Oversight Board shall provide to the Legislature -- (i) a notice of violation that includes a description of any necessary corrective action; and (ii) an opportunity to correct the violation." 48 U.S.C. § 2142(d)(1)(B).

[9]     The complaint was filed in the District of Puerto Rico in the Commonwealth's ongoing case under Title III of PROMESA.

327 F. Supp. 3d at 369-71. The court first held that the request for a declaration about Fiscal Plan recommendations did not rest on a proper Article III case or controversy, and it dismissed that request, which appeared in Paragraph 79 of the complaint, for lack of subject matter jurisdiction. Id. at 370-71. Next, in dismissing the remaining declaratory- and injunctive-relief claims, the district court gave two reasons. To the extent those claims directly challenged the Board's budget certification decisions, the district court dismissed them for lack of subject matter jurisdiction, relying on PROMESA § 106(e). Id. at 371. That provision states that "[t]here shall be no jurisdiction in any United States district court to review challenges to the Oversight Board's certification determinations under [PROMESA]." 48 U.S.C. § 2126(e); see Rivera-Schatz, 327 F. Supp. 3d at 371. To the extent that the remaining claims challenged the Board's actions as exceeding its authority under PROMESA or as encroaching on the Legislative Assembly's power under Puerto Rico's Constitution, the district court dismissed them for failure to state a claim. Rivera-Schatz, 327 F. Supp. 3d at 372-73.

## II.

We review the district court's grant of the motion to dismiss de novo. See, e.g., Flores v. OneWest Bank, F.S.B., 886 F.3d 160, 162 (1st Cir. 2018). In doing so, we analyze the issues within the basic three-part framework outlined by the district

- 20 -

court, considering first the request for a declaration about Fiscal Plan recommendations, and then the declaratory- and injunctive-relief claims about the 2019 Budget.

We affirm the district court's grounds for dismissal. First, the federal courts lack Article III jurisdiction over the complaint's request for a declaration about Fiscal Plan recommendations. Second, the district court correctly concluded that, under § 106(e), it lacked jurisdiction to review alleged errors in the Board's certification determinations. Third, the complaint fails to state a claim to relief on the theory that the Board exceeded its authority under PROMESA during the 2019 Fiscal Plan and Territorial Budget processes.

The Board defends these grounds. It does not challenge the district court's reading of § 106(e), and we do not engage that topic.

A.   Article III Jurisdiction

Count I of the complaint alleges that "PROMESA does not allow the [Board] to bypass or usurp the Legislative Assembly's legislative power" by "set[ting] forth the Commonwealth's public policy" as to "the rights of employees in Puerto Rico." The Board did just that, the complaint asserts, "when it tried to force the Legislative Assembly to pass a bill retroactively repealing Law 80 as a condition to approve the Commonwealth's budget." And when the Legislative Assembly declined to repeal Law 80, the complaint

- 21 -

says, the Board "punished it by imposing severe cuts in its operational budget." Based on those allegations, Paragraph 79 of the complaint says:

> Plaintiffs are therefore entitled to a judicial declaration under [the Declaratory Judgment Act] . . . that the rejected policy recommendations in the Fiscal Plan are non-binding recommendations, and that the Legislative Assembly cannot be compelled to implement any of those policies, and the [Board] may not take any actions to force compliance with such recommendations.

The federal courts lack Article III jurisdiction over Paragraph 79's request.

The Declaratory Judgment Act allows "any court of the United States" to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," but only "[i]n a case of actual controversy within [that court's] jurisdiction." 28 U.S.C. § 2201(a). As the Supreme Court has explained, "the phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937)). Although there is not "the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not," id., "[b]asically, the question in each case is whether the facts alleged, under all the

- 22 -

circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).

This standard cannot be satisfied if Paragraph 79 is read to request a declaration about the rights of the Board and the Legislative Assembly whenever there is disagreement about whether to implement a Fiscal Plan policy included by the Board.[10] That would be a request for an advisory opinion about the import of Fiscal Plans under PROMESA.

Appellants' attempts to read into Paragraph 79 a justiciable dispute with definite legal and factual dimensions fare no better under Article III's standard. The request cannot be made justiciable by defining the "rejected policy recommendations" as the labor reform package introduced in the

_____

[10]    The district court observed that "recommendations" could refer to "the concept of 'recommendations' under Section 205 of PROMESA." Rivera-Schatz, 327 F. Supp. 3d at 370. Section 205 allows the Board to make policy recommendations to the Governor or the Legislative Assembly "at any time" and provides a procedure for "the territorial government" to adopt or reject the recommendations. 48 U.S.C. § 2145. In his brief, Méndez-Núñez, the House Speaker, alludes to this reading. We agree with the district court that, if Paragraph 79 refers to § 205 recommendations in the abstract, that paragraph requests an advisory opinion about the "meaning and effect of a section of the statute," and we lack Article III jurisdiction. Rivera-Schatz, 327 F. Supp. 3d at 371.

- 23 -

April Fiscal Plan, as Rivera-Schatz, the Senate President, does in his brief. Under this reading of Paragraph 79, the dispute lacks the requisite reality: The currently certified Fiscal Plan does not include the objected-to labor reforms, which were removed before the June version. To provide the declarations, then, would require a court to imagine a set of labor reforms into the Fiscal Plan and to predict the Board and the Legislative Assembly's reactive moves and counter-moves. The resulting declaration would be an impermissible "opinion advising what the law would be upon a hypothetical state of facts." Aetna, 300 U.S. at 241.

Appellants cannot get around this by reading Paragraph 79 to request a declaration about the April or May Fiscal Plans and the ensuing actions of the Legislative Assembly and the Board. Such a request would still be one for an advisory opinion, as past differences are not amenable to the type of relief that Article III allows courts to give -- "decree[s] of a conclusive character" adjudicating adverse parties' actual rights and interests. Aetna, 300 U.S. at 241; cf. Hall v. Beals, 396 U.S. 45, 48 (1969) (holding that an amendment to the challenged statute eliminated any "controversy of the kind that must exist if we are to avoid advisory opinions").

Nor can the request be made justiciable by reading Paragraph 79 to request a declaration on disputes that the appellants say are likely to arise under future Fiscal Plans. In

Declaratory Judgment Act cases where jurisdiction is exercised based on a threat of future injury, the potential injury is typically legal liability on a set of already defined facts,[11] so that the Act merely "defin[es] procedure" to enable judicial resolution of a case or controversy that might otherwise be adjudicated at a different time or in a slightly different form. See Aetna, 300 U.S. at 240. That is not this request. Whatever future disputes may arise have not yet been and may never be adequately framed by their factual dimensions. See Texas v. United States, 523 U.S. 296, 300 (1998) (stating that a dispute is not justiciable "if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all'" (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985))). Declaratory claims based on abstractions are not justiciable under Article III. See Int'l Longshoremen's & Warehousemen's Union, Local 37 v. Boyd, 347 U.S. 222, 224 (1954) ("Determination of the scope . . . of legislation" on fictional facts "involves too remote and abstract an inquiry for the proper exercise of the judicial function.").

---

[11]    See, e.g., Steffel v. Thompson, 415 U.S. 452, 475 (1974) (exercising jurisdiction over pre-prosecution challenge to criminal statute); MedImmune, 549 U.S. at 137 (recognizing Article III jurisdiction over declaratory claims based on threatened private enforcement action).

B.    Statutory Subject Matter Jurisdiction

The complaint also seeks a declaration that the June Budget certified by the Board "is null and void" and an injunction "prohibiting the defendants from implementing and enforcing" the Board-developed and certified Budget and "reinstat[ing]" the Legislative Assembly's Budget.  In support of this, Count II of the complaint outlines a theory that the Board erred in determining that Senate Bill 1011 did not conform with the May Fiscal Plan.  This error, Count II asserts, led the Board to a second erroneous determination that the June Fiscal Plan should be certified, then to a third erroneous determination that the Legislative Assembly's Budget should not be certified because it did not comply with the June Fiscal Plan, and finally to a fourth erroneous determination that the Board-developed Budget should be certified.  The district court held that it lacked jurisdiction under § 106(e) over the claims that rested on Count II's allegations.  See Rivera-Schatz, 327 F. Supp. 3d at 371.

We agree.  PROMESA grants the Board exclusive authority to certify Fiscal Plans and Territory Budgets for Puerto Rico.  It then insulates those certification decisions from judicial review in § 106(e): "There shall be no jurisdiction in any United States district court to review challenges to the Oversight Board's certification determinations under this chapter."  48 U.S.C. § 2126(e).  Section 106(e) is an exception to PROMESA's general

grant of jurisdiction at § 106(a), which provides that "any action against the Oversight Board, and any action otherwise arising out of this chapter, in whole or in part, shall be brought in a United States district court for the covered territory." Id. § 2126(a).

Count II of the complaint alleges four unreviewable Board errors in "certification determinations under this chapter." Id. § 2126(e). The district court was correct that it lacked jurisdiction to review the Board's determination that the passage of Senate Bill 1011 was inconsistent with the May Fiscal Plan's requirement to repeal Law 80. That determination was the basis for the Board's decision to certify, under § 201(e)(2), the June Fiscal Plan. And § 106(e) bars district courts from reviewing the reasons for certification determinations as much as the certification determinations themselves. Nor did the district court have jurisdiction to review whether the Board erred in deeming the Legislative Assembly's Budget non-compliant with the applicable Fiscal Plan and in certifying instead a Board-developed Territory Budget. These decisions, which § 202 expressly empowers the Board to make, see id. § 2142(d)-(e), are prototypical "certification determinations under this chapter," id. § 2126(e).

Rivera-Schatz's argument that the Board's determinations about Territory Budgets adopted by the Legislative Assembly are reviewable runs headlong into the text of § 106(e). His argument rests on the following attempted contrast of §§ 201 and 202: § 201

states that the Board has "sole discretion" to determine whether to certify a Fiscal Plan or a Budget proposed by the Governor, see id. § 2141(c)(3), (c)(1), while § 202 does not use the phrase "sole discretion" in granting the Board authority to "determine whether the [Legislature-]adopted Territory Budget is a compliant budget," id. § 2142(d)(1). From this, Rivera-Schatz asks us to infer first that the Board's authority to make determinations about Legislature-adopted Budgets is non-exclusive. Rivera-Schatz urges that a second inference -- that such determinations are subject to judicial review -- follows. Section 106(e)'s text forecloses these inferences. It plainly bars judicial review of "challenges to the Oversight Board's certification determinations." Id. § 2126(e). It does not distinguish among the various certification determinations that PROMESA commits to the Board.

Appellants next argue, by analogy to a doctrine of administrative law, that the challenged certification determinations are reviewable, despite § 106(e)'s jurisdictional prohibition, because the Board's actions violated clear statutory directives in §§ 201 and 202. This court has never recognized such an exception to any statutory provision explicitly precluding judicial review. Cf. Paluca v. Sec'y of Labor, 813 F.2d 524, 528 (1st Cir. 1987) (declining the invitation). Nor do we here. That is because (among other reasons) PROMESA's instructions to the Board about certification are not comparable to the types of

- 28 -

congressional commands that can prompt "judicial review independent of [statutory] review provisions." Kirby Corp. v. Peña, 109 F.3d 258, 269 (5th Cir. 1997) (defining the "clear statutory mandate" exception as limited to administrative agency actions "so contrary to the terms of the relevant statute that [they] necessitate[] judicial review independent of [statutory] review provisions"). To see this, compare the statutory rule violated in Leedom v. Kyne, 358 U.S. 184 (1958), with the standards laid out in PROMESA §§ 201 and 202. Kyne reviewed (without a statute authorizing judicial review) a National Labor Relations Board order certifying a collective bargaining unit mixing two types of employees, despite an unambiguous statutory bar on units mixing those employees. Id. at 185. In contrast, under § 201, the Board has "sole discretion" to determine whether Fiscal Plans comply with statutory requirements such as "provide for the elimination of structural deficits." 48 U.S.C. § 2141(b)(1)(D); see id. § 2141(b)-(c). Similarly, § 202 gives the Board "discretion" to decide whether a Territory Budget comports with a multifaceted Fiscal Plan. See id. § 2142.

Nor, finally, are appellants helped by their citations to McNary v. Haitian Refugee Center, Inc., 498 U.S. 479 (1991). That case allowed jurisdiction, despite a statutory bar on judicial review, over a challenge to an agency's procedures under the Due

Process Clause.  Id. at 481-84.  But no federal constitutional claims have been brought here.

The district court properly dismissed the challenges to the Board's certification decisions in Count II for lack of statutory subject matter jurisdiction.

## C.   Failure to State a Claim

The complaint could arguably be read to allege three remaining theories for relief.[12]  First, we read it to assert that the Board exceeded its authority under PROMESA §§ 204 and 205, which grant the Board powers related to legislation.  See 48 U.S.C. §§ 2144-2145; see also Aurelius Inv., 2019 WL 642328, at *12 (noting the Board's legislation-related powers).  Second, we read the complaint as alleging that the Board's decision to certify a

_____

[12]    Also remaining are two arguments made by appellants on appeal but not to the district court: (1) The Board exceeded its authority under § 201 when it certified its June Fiscal Plan without allowing the Governor another opportunity to submit a compliant Fiscal Plan.  (2) The Board deliberately delayed certifying its June Fiscal Plan so that the Legislative Assembly would not have time before the start of Fiscal Year 2019 to approve and submit to the Board under § 202(d)(1) a Territory Budget compliant with the Board's June Fiscal Plan.  Neither argument was developed in the pleadings, see Rivera-Schatz, 327 F. Supp. 3d at 371 (cataloging other theories pled), and so we consider both waived, see, e.g., French v. Bank of N.Y. Mellon, 729 F.3d 17, 19 n.1 (1st Cir. 2013) ("[B]elated allegations" are waived.).  In any event, both arguments are also inconsistent with the events of the winter, spring, and summer of 2018.  The arguments overlook the lineage of the Board's June Fiscal Plan:  That Fiscal Plan was the culmination of the formal development process and the informal negotiation process between the Governor and the Board between January and May.  And the June Fiscal Plan was also identical, in all respects relevant to this case, to the April Fiscal Plan.

- 30 -

Board-developed Budget that cut the Legislative Assembly's funds was punitive and therefore "contraven[ed] . . . the limited powers delegated by Congress to the [Board]." Third, we read the complaint to allege that the Board's decision to certify its Budget over the Legislative Assembly's impinged on the Legislative Assembly's power under Puerto Rico's Constitution.

The district court chose to exercise jurisdiction over these claims that the Board exceeded its authority under PROMESA, a choice we do not evaluate,[13] and to dismiss them for failure to state a claim to relief. We affirm the dismissal, taking the three remaining arguments in turn.

First, the complaint's assertions that the Board violated §§ 204 and 205 rest on an inaccurate factual premise: that the Board forced the Legislative Assembly to repeal or that the Board otherwise nullified Law 80. The Board did nothing of the sort; Law 80 remains on the books and the applicable Fiscal Plan does not call for its repeal.

---

[13] The issue of whether § 106(e) also precludes jurisdiction over these claims is not free from doubt, but we bypass it here and assume statutory subject matter jurisdiction because the merits of the remaining claims are quite easily resolved against the party invoking our jurisdiction. See, e.g., Moriarty v. Colvin, 806 F.3d 664, 668 (1st Cir. 2015) (using hypothetical jurisdiction where the sidestepped jurisdictional question is statutory); Umstead v. Umstead, 446 F.3d 17, 20 n.2 (1st Cir. 2006) (citing Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 59-60 (1st Cir. 2003)) (same).

As to § 204, the complaint alleges that the Board "invalidate[d]" Law 80 and, in doing so, exceeded its authority under § 204(a) to review laws that were enacted "after, rather than before the [Board] became operational."[14]  That provision authorizes the Board to review, for consistency with the governing Fiscal Plan, legislation that "a territorial government duly enacts . . . during any fiscal year in which the Oversight Board is in operation."  48 U.S.C. § 2144(a)(1).  It also empowers the Board to "direct the territorial government to . . . correct the law to eliminate" any "significant[] inconsisten[cy]" with the Fiscal Plan.  Id. § 2144(a)(4)(B).  And if "the territorial government fails to comply with" such a directive, the Board may "take such actions as it considers necessary . . . to ensure that the enactment or enforcement of the law will not adversely affect the territorial government's compliance with the Fiscal Plan, including preventing enforcement or application of the law."  Id. § 2144(a)(5).  But the Board did not "prevent[] enforcement or application" of Law 80.  Id.  The complaint fails to state a claim to relief based on § 204.

---

[14]    In his brief on appeal, Rivera-Schatz argues instead that the Board unlawfully bypassed the § 204 process in deeming Senate Bill 1011 to be inconsistent with the Fiscal Plan.  This theory was not raised in the complaint or otherwise before the district court and is therefore waived.  See, e.g., French, 729 F.3d at 19 n.1.

The complaint also fails to state a claim to relief based on § 205. That provision allows the Board to "at any time submit recommendations to the Governor or the Legislature on actions the territorial government may take to ensure compliance with the Fiscal Plan." Id. § 2145(a). The Governor and the Legislative Assembly may then decide "whether the territorial government will adopt the recommendations." Id. § 2145(b)(1). The complaint alleges that the labor reform package was a § 205 recommendation and that, because § 205 empowers the Legislative Assembly to reject such recommendations, the Board violated that provision in making the reforms mandatory. But the Board did not impose any reforms. Instead, it removed the labor package from the Fiscal Plan after the Legislative Assembly chose not to repeal Law 80.

Next, the sequence of events leading to the certification of the 2019 Budget refutes the second alleged theory. On that theory, the complaint specifically says that, although the Board lacks "the power to impose penalties on Commonwealth officers or employees,"[15] the Board certified a 2019 Budget with a cut to the Legislative Assembly's budget, a cut which the complaint alleges was a punitive response to the Legislative Assembly's

---

[15] The complaint cites § 104(l), which subjects Commonwealth officials to discipline by the Governor, not by the Board, for violation of "any valid order of the Oversight Board." 48 U.S.C. § 2124(l). We take no position on the meaning or effect of this provision.

- 33 -

decision not to repeal Law 80. Yet, the recommendation that the Legislative Assembly's budget should be reduced, along with the budgets of other government entities, originated in the April Fiscal Plan, and preceded by months the Legislative Assembly's actions on Law 80. Further, after the Legislative Assembly declined to repeal Law 80, the Board acted within its authority when it certified a June Fiscal Plan and 2019 Territory Budget that included the previously proposed cuts to the Legislative Assembly's operating budget. PROMESA authorizes the Board to adopt Fiscal Plans and Budgets incentivizing the Legislative Assembly to enact the Board's recommended policies and accounting for the Legislative Assembly's responses to those recommended policies. See id. §§ 2141-2151. Indeed, it is difficult to see how, without such powers, the Board could be effective in achieving Congress's "purpose" of "provid[ing] a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets." Id. § 2121(a) (stating Board's purpose).

Finally, the complaint alleges that the Board's decision to certify its Budget over the Legislative Assembly's was an "unlawful[] encroach[ment] upon the Legislative Assembly's exclusive legislative power under the Puerto Rico Constitution." But PROMESA accounts for the Legislative Assembly's power under the Constitution: Under PROMESA's preemption provision, the grants of authority to the Board at §§ 201 and 202 to approve Fiscal Plans

- 34 -

and Budgets "prevail over any general or specific provisions of territory law," including provisions of Puerto Rico's Constitution that are "inconsistent with [PROMESA]." Id. § 2103; see also Maldonado-Burgos, 844 F.3d at 346. PROMESA does generally reserve "the power of [Puerto Rico] to control, by legislation or otherwise, the territory." 48 U.S.C. § 2163. But this reservation of power is expressly "[s]ubject to the limitations set forth in [Titles] I and II of [PROMESA]," where §§ 201 and 202 appear. Id. When the Board certified the 2019 Fiscal Plan and Budget, then, it exercised authority granted to it under PROMESA.

## III.

The judgment of the district court is affirmed. No costs are awarded.