# United States Court of Appeals
## For the First Circuit

No. 24-1575

RIVERDALE MILLS CORPORATION,

Petitioner,

v.

LORI CHAVEZ-DEREMER, Secretary of Labor,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION

Before

Rikelman, Lynch, and Aframe,
<u>Circuit Judges</u>.

Travis W. Vance, with whom Joshua D. Nadreau, Fisher & Phillips LLP was on brief, for petitioner.

Anne E. Bonfiglio, Attorney, U.S. Department of Labor, with whom Jonathan L. Snare, Acting Solicitor of Labor, Edmund C. Baird, Associate Solicitor for Occupational Safety and Health, and Heather R. Phillips, Counsel for Appellate Litigation, were on brief, for respondent.

November 20, 2025

**LYNCH**, **Circuit Judge**. Petitioner Riverdale Mills Corporation seeks interlocutory review of an Occupational Safety and Health Review Commission (OSHRC) Administrative Law Judge's (ALJ) March 29, 2024, denial of its motion to seal its 2019 balance sheet, submitted with its fee application under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504. The Commission automatically dismissed Riverdale's appeal due to a lack of quorum. For the reasons that follow, we assume that we have interlocutory jurisdiction under the collateral order doctrine and deny Riverdale's petition for review on the merits.

I.

Riverdale manufactures wire mesh fabrics at its Northbridge, Massachusetts factory. In 2019, the Occupational Safety and Health Administration (OSHA) conducted two investigations into Riverdale's facility. Riverdale Mills Corp., 2022 CCH OSHD ¶ 33893, 2022 WL 3656956, at *1 (Nos. 19-1566 & 19-2011, 2022). The first investigation resulted in a citation issued on September 26, 2019, alleging violations of multiple safety standards of the Occupational Safety and Health Act of 1970 ("OSH Act"), 29 U.S.C. §§ 651-678. Id. The second led to a citation issued on December 13, 2019, alleging violations of multiple health standards of the OSH Act. Id.

Riverdale contested the health and safety violations in a consolidated hearing held before an OSHRC ALJ in June and August

2021. On July 1, 2022, the ALJ affirmed three citation items; the remaining citation items were vacated or withdrawn.

On December 20, 2023, Riverdale filed an application before the ALJ seeking recovery of $223,064.74 in fees and costs pursuant to the EAJA. The purpose of the EAJA, enacted in 1980, is "to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government." Scarborough v. Principi, 541 U.S. 401, 406 (2004) (quoting H.R. Rep. No. 96-1005, at 9 (1979)). The EAJA permits an "eligible" party to recover attorney's fees and other expenses upon prevailing in an adjudicative agency proceeding, unless the agency's position was "substantially justified" or "special circumstances make an award unjust." 5 U.S.C. § 504(a)(1)-(2).

Pertinent here, an eligible "party" is defined in OSHRC's regulations implementing the EAJA as a business with a net worth not exceeding $7 million and no more than 500 employees at the time the adjudication commenced. 29 C.F.R. § 2204.201. An OSHRC ALJ initially hears and decides the fee application. Id. § 2204.301(a). The applicant may seek review of the ALJ's decision by the OSHRC Commission. Id. § 2204.407.

Under OSHRC regulations, to demonstrate eligibility an EAJA applicant must submit a "detailed exhibit" disclosing its net

- 3 -

worth at the time the OSHRC adjudication began.  Id. § 2204.302(a).
The exhibit "may be in any form convenient to the applicant that
provides full disclosure of the applicant's assets and liabilities
and is sufficient to determine" whether the applicant meets the
eligibility criteria set forth in § 2204.201.  Id.  "Ordinarily,
the net worth exhibit will be included in the public record of the
proceeding."  Id. § 2204.302(b).  However, "an applicant that
objects to public disclosure of information in any portion of the
exhibit and believes there are legal grounds for withholding it
from disclosure may request that the documents be filed under seal
or otherwise be treated as confidential."  Id.

On December 20, 2023, alongside its EAJA fee
application, Riverdale submitted a motion for leave to file its
EAJA exhibit under seal.  The motion stated that Riverdale planned
to submit its comparative balance sheet as of December 2019 to
establish its EAJA eligibility, but sought to do so under seal
because the balance sheet contained "confidential business
information," including Riverdale's "current liabilities, long
term liabilities, and shareholders' equity," disclosure of which
"would affect [Riverdale's] business prospects and may impact
future opportunities."  It cited two cases, Doe v. Pub. Citizen,
749 F.3d 246, 269 (4th Cir. 2014) and SMD Software, Inc. v. EMove,
Inc., No. 08-CV-403, 2013 WL 1091054, at *2 (E.D.N.C. Mar. 15,
2013), for the proposition that a corporation's strong interest in

- 4 -

preserving the confidentiality of its proprietary and trade-secret information may outweigh the public's right of access to judicial records.

On January 3, 2024, the Secretary of Labor opposed Riverdale's motion. The Secretary argued that Riverdale had not shown the requisite "legal grounds for withholding" the balance sheet under 29 C.F.R. § 2204.302(b) because it "fail[ed] to articulate why disclosure of any specific information in the net worth exhibit will cause specific harm, let alone justify sealing the entire document."

On January 22, 2024, Riverdale filed a reply and a declaration of its chief financial officer (CFO) which briefly alleged multiple line items in the balance sheet would provide competitors with Riverdale's confidential information. According to the CFO's declaration, the 2019 balance sheet included Riverdale's amounts of accounts receivable, product inventory, equipment value, accounts payable, available credit, and long-term liabilities and debt as of 2019, all of which competitors could use to glean information about Riverdale's financial status, vulnerabilities, and ability to compete in the marketplace.

The ALJ denied Riverdale's motion to seal in a written decision dated March 29, 2024. The ALJ first concluded that the balance sheet qualified as a judicial record because "the Court will rely on it to determine whether Riverdale meets the definition

of [a] party under EAJA." Accordingly, the ALJ found that "the common law presumption of public access to judicial records attached to the balance sheet." The ALJ held that Riverdale did not establish the necessary "compelling reasons" for overcoming this presumption or for defeating 29 C.F.R. § 2204.302(b)'s directive that "ordinarily" the net worth exhibit will be included in the public record.[1]

The ALJ cited precedent from the D.C. Circuit and First Circuit, both of which are available courts of review under 29 U.S.C. § 660(a). The ALJ first applied a six-factor balancing test adopted by the D.C. Circuit, under which courts weigh (1) the need for public access to the documents at issue; (2) previous public access to the documents; (3) the fact of an objection to public access and the identity of those objecting to public access; (4) the strength of the generalized property and privacy interests asserted; (5) the possibility of prejudice; and (6) the purposes for which the documents were introduced. United States v. Hubbard, 650 F.2d 293, 317-22 (D.C. Cir. 1980). The ALJ also applied the First Circuit's framework in Federal Trade Commission v. Standard Financial Management Corp., 830 F.2d 404 (1st Cir. 1987), under which the court will "weigh the presumptively paramount right of

_____

[1] The ALJ further found the public had a First Amendment right of access to the exhibit. We do not reach this basis for its decision, noting the ALJ relied on cases involving traditional media entities covered by the First Amendment.

- 6 -

the public to know against the competing private interests at stake," assessed "in light of the relevant facts and circumstances of the particular case." Id. at 410 (second quoting Nixon v. Warner Communications, Inc., 435 U.S. 589, 599 (1978)).[2]

On April 5, 2024, Riverdale filed a Petition for Interlocutory Review (Petition) before the Commission. In its Petition, Riverdale argued for the first time that the OSH Act, 29 U.S.C. § 664, "preempted" the common law because it directly instructs the OSHRC "to make all orders necessary to protect any material which contains, or which might reveal a trade secret," as defined in the Trade Secrets Act, 18 U.S.C. § 1905. The Acting Secretary filed an Opposition on April 12, 2024.

On May 6, 2024, the Commission automatically denied the Petition because it then lacked a quorum. See 29 U.S.C. § 661(f) (Commission must have quorum of at least two members to rule on a dispositive motion); 29 C.F.R. § 2200.73(b). It continues to lack a quorum. OSHRC, Organizational Chart (Aug. 7, 2025), https://www.oshrc.gov/wp-content/uploads/Organizational-Chart.pdf [https://perma.cc/F3PD-6M54].

---

[2] Riverdale did not address Standard Fin. in its opening brief and has waived its objections to the ALJ's analysis applying that test. "[O]ur precedent is clear 'that issues advanced for the first time in an appellant's reply brief are deemed waived.'" United States v. Muñoz-Gonzalez, 145 F.4th 21, 25–26 (1st Cir. 2025) (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 299 (1st Cir. 2000)).

On June 13, 2024, Riverdale appealed to this court. On July 22, 2024, the court clerk's office issued an order requiring Riverdale to show cause as to why the appeal should not be dismissed for lack of jurisdiction, noting that the Commission's denial did "not appear to be a 'final order' under 29 U.S.C. § 660(a)." On April 2, 2025, this court ordered that the petition "may proceed to briefing, with all gating issues reserved to the ultimate merits panel."

## II.

The ALJ's denial of Riverdale's motion to seal was an interlocutory order, which is generally not immediately reviewable. 28 U.S.C. § 1291; see also 29 U.S.C. §§ 660(a)-(b), 659(c) (conferring jurisdiction over appeals from "final" OSHRC orders, which are those "affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief"). One exception to this rule is the collateral order doctrine, which allows interlocutory appeal from a "small class" of orders that present: "(1) a conclusive decision, (2) distinct from the merits of the action, (3) on an important issue, (4) which would effectively be unreviewable on appeal from a final judgment." Godin v. Schencks, 629 F.3d 79, 83-84 (1st Cir. 2010). The doctrine "applies to judicial review of administrative determinations." Rhode Island v. EPA, 378 F.3d 19, 25 (1st Cir. 2004).

We will assume here that there is no categorical rule providing for interlocutory jurisdiction over all appeals from denials of sealing orders. See In re Bos. Herald, Inc., 321 F.3d 174, 177-78(1st Cir. 2003) (applying case-specific approach to find jurisdiction over appeal from sealing order under collateral order doctrine); Abdelhady v. George Washington Univ., 89 F.4th 955, 958 (D.C. Cir. 2024) (recognizing circuit split on whether the collateral order doctrine categorically applies to any order denying a motion to seal and finding "no occasion to weigh in until resolution of the issue is necessary to our decision and the issue is fully and adequately briefed."). And, assuming that there is no such categorical rule, we question whether this appeal from an administrative agency order denying sealing would otherwise implicate an "important issue meriting immediate review," as required by the third factor of the collateral order doctrine. See Awuah v. Coverall N. Am., Inc., 585 F.3d 479, 482 (1st Cir. 2009) (holding that appeal from discovery-related order which involved fact-specific "routine judgments about the likelihood that competitive harm will be done by disclosures about particular aspects of [defendant's] business operations" did not present an important legal question). But since neither party fully briefed the issue and the outcome would be the same regardless, we will assume the existence of interlocutory jurisdiction over this appeal. See Cowels v. Fed. Bureau of Investigation, 936 F.3d 62,

67 (1st Cir. 2019) ("Where a question of statutory jurisdiction is complex, but the merits of the appeal are 'easily resolved against the party invoking jurisdiction,' we can assume jurisdiction for purposes of deciding the appeal." (quoting In re Fin. Oversight & Mgmt. Bd. for P.R., 916 F.3d 98, 114 n.13 (1st Cir. 2019))).

## III.

### A. Riverdale Has Waived Its Argument That the OSH Act Displaces the Common Law

On appeal, Riverdale argues that the ALJ erred by applying common-law balancing tests instead of the OSH Act, 29 U.S.C. § 664, to its motion to seal.  However, Riverdale waived this argument by failing to raise it before the ALJ.  See 29 U.S.C. § 660(a) ("No objection that has not been urged before the Commission shall be considered by the [appellate] court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."); P. Gioioso & Sons, Inc. v. Occupational Safety & Health Rev. Comm'n, 115 F.3d 100, 107 (1st Cir. 1997) ("[A]n aggrieved party desiring to preserve an issue for judicial review must raise it before the ALJ, articulate it clearly in its [petition for discretionary review to the Commission], and offer a modicum of developed argumentation in support of it.").  Riverdale's own citations suggested to the ALJ that the common law should apply and its briefing made no references to 29 U.S.C. § 664.  Thus, Riverdale has waived its argument that § 664 displaces the common-law analysis.

- 10 -

B. The ALJ Did Not Abuse Her Discretion in Denying Riverdale's Motion for Leave to File Under Seal

We review the ALJ's denial of Riverdale's motion to seal for abuse of discretion. United States ex rel. Nargol v. DePuy Orthopaedics, Inc., 69 F.4th 1, 15 (1st Cir. 2023). In the context of sealing orders, an ALJ abuses her discretion by "ignoring a material factor that deserves significant weight, relying on an improper factor, or, even if [she] mulls only the proper mix of factors, by making a serious mistake in judgment." Siedle v. Putnam Invs., Inc., 147 F.3d 7, 10 (1st Cir. 1998). Riverdale, to its credit, does not contend that the ALJ ignored a material factor or applied an improper factor under the Hubbard test, but objects to the manner in which the ALJ weighed the evidence in the record.

"Under the common law, there is a long-standing presumption of public access to judicial records." In re Gitto Glob. Corp., 422 F.3d 1, 6 (1st Cir. 2005). Public disclosure of judicial records "helps safeguard the integrity, quality, and respect in our judicial system, and permits the public to keep a watchful eye on the workings of public agencies." Id. (quoting In re Orion Pictures Corp., 21 F.3d 24, 26 (2d Cir.1994)). Moreover, the applicable OSHRC regulations expressly provide that EAJA exhibits will be available to the public unless the applicant files a motion to seal based on "legal grounds." 29 C.F.R. § 2204.302(b).

Against this backdrop, the ALJ did not abuse her discretion in finding that Riverdale did not meet its burden to justify sealing. The ALJ correctly reasoned that the balance sheet was "foundational" to the question of Riverdale's eligibility and that the public has an interest in reviewing the expenditure of public funds under the EAJA. Riverdale's claim to be "one of the largest manufacturers of welded wire mesh in the world" further highlights the public's interest in this determination. Riverdale, Products, https://riverdale.com/products/ [https://perma.cc/EG9R-8MSW] (last visited September 15, 2025).

The ALJ also did not abuse her discretion in finding Riverdale's private interests were insufficient to outweigh the presumption of public access. The ALJ concluded that the private interests at stake deserved less weight because company leadership objected to disclosure of the exhibit, rather than a third party. As Riverdale acknowledges, third-party objections typically receive greater weight under the Hubbard test. Additionally, the 2019 balance sheet contained only corporate financial information, not sensitive data such as medical or customer records. Finally, the ALJ could not fully assess the potential prejudice to Riverdale because it failed to submit the balance sheet for in camera review.

The petition is denied.