# United States Court of Appeals
## For the First Circuit

No. 19-1075

THOMAS HAMANN,

Plaintiff, Appellant,

v.

STUART A. CARPENTER; COPLEY MOTORCARS CORPORATION;
LESLIE H. WEXNER,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Thompson, Kayatta, and Barron,
Circuit Judges.

George W. Kramer for appellant.
Matthew S. Zeiger, with whom Zeiger Tigges & Little LLP,
Robert R. Berluti, and Berluti McLaughlin & Kutchin LLP were on
brief, for appellees.

September 5, 2019

KAYATTA, **Circuit Judge**.  Thomas Hamann alleges that he was denied the fruits of a profitable exclusive-seller agreement for the sale of a 1953 Ferrari automobile when defendant Stuart Carpenter caused the breach of that agreement by threatening economic harm to the other party to the contract.  Hamann brought this suit, including claims of tortious interference with an advantageous business relationship, tortious interference with an existing contract, and violations of Massachusetts's Consumer Protection Law, Mass. Gen. Laws ch. 93A, § 11, in the U.S. District Court for the District of Massachusetts.  The district court dismissed with prejudice Hamann's claims, reasoning that Hamann had failed to plausibly allege an improper motive underlying Carpenter's interference with Hamann's contract and concluding that Carpenter's alleged improper means of interfering with that contract amounted to nothing more than "[t]ough negotiating."  We now reverse in part and affirm in part that decision.

## I.

Because the district court dismissed Hamann's complaint on a Rule 12(b)(6) motion to dismiss, we take the nonconclusory, nonspeculative facts contained in the complaint as true and draw all reasonable inferences from those facts in Hamann's favor.  See Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018).

At issue in this appeal is a rare 1953 Ferrari 375MM Pininfarina Spyder ("the Ferrari"), a highly sought-after prize

- 2 -

for the car enthusiast with the means to afford the significant bounty needed to acquire one. Emilio Gnutti, an Italian collector who originally owned the Ferrari, agreed to sell the car to Vincenzo Scandurra, an Italian national living in Monaco who intended to resell it (presumably at a profit). Scandurra paid Gnutti a large deposit for the Ferrari. But because Scandurra did not have enough cash to complete the purchase, he found himself under significant pressure to find a buyer so as not to forfeit the deposit. So, Scandurra hired Hamann, a buyer and seller of high-end vehicles in Connecticut, as his exclusive agent to find a buyer for the Ferrari and agreed to pay Hamann a commission for his work.

Hamann first offered to sell the Ferrari to Stuart Carpenter, owner of Copley Motorcars Corporation and agent of billionaire Leslie Wexner, for $15 million. In extending that offer, Hamann informed Carpenter that Hamann was the exclusive seller of the Ferrari. Carpenter declined Hamann's offer, noting that "he did not have any interest in said Ferrari . . . , nor would Wexner." Hamann then secured a bid of $10.5 million for the Ferrari from a different party, Dana Mecum. Scandurra gave Hamann the green light to sell the Ferrari to Mecum at that price. Hamann, as agent for Mecum, then entered into an agreement with Scandurra for the purchase of the Ferrari and sent Scandurra a €2 million deposit.

Two days later, Hamann learned that Wexner (through Carpenter and other agents) had contacted Gnutti directly and offered to purchase the Ferrari for €9 million (roughly equivalent to $12.5 million at that time, according to the complaint). Scandurra informed Hamann that he would have to back out of their agreement and sell the Ferrari to Carpenter and Wexner because Carpenter had threatened to "go directly to Gnutti and interfere with Scandurra's relationship with Gnutti" if Scandurra refused Carpenter's offer. If Carpenter made good on this threat, Scandurra feared, he would lose out on the opportunity to sell the other cars in Gnutti's collection.

Hamann immediately emailed Carpenter, reminding him that Hamann was the exclusive seller of the Ferrari and informing him that the Ferrari was "under contract with a deposit on the way." Carpenter eventually responded, stating that "he didn't have the feeling that [Hamann] had the exclusive sales rights to [the Ferrari]" and noting that "seven other dealers would have offered him the car after [Hamann] for the same price."

Scandurra executed the sale to Carpenter and Wexner. After transferring proceeds from the sale to Gnutti and paying other commissions, Scandurra informed Hamann that he would not be able to pay him a commission.

Hamann did not sue Scandurra for his breach of their agreement. Instead, Hamann sued Carpenter, Copley Motorcars

- 4 -

Corporation, and Wexner, as Carpenter's principal, for tortious interference with an advantageous business relationship, tortious interference with an existing contract, and violations of Massachusetts's Consumer Protection Law, Mass. Gen. Laws ch. 93A, § 11. After giving Hamann an opportunity to amend his complaint, the U.S. District Court for the District of Massachusetts concluded that Hamann had failed to plausibly allege any impermissible motive or means of interference with Hamann's business relationships or existing contracts. See Hamann v. Carpenter, No. 17-cv-11292-ADB, 2019 WL 181284, at *5 (D. Mass. Jan. 11, 2019). Accordingly, the court dismissed his suit. Id. This timely appeal followed.

## II.

We address, in order, Hamann's two common law tortious-interference claims, followed by his statutory Massachusetts Chapter 93A claim.

## A.

Under Massachusetts law, a plaintiff bringing a claim of tortious interference with a contractual relationship must prove that "(1) he had a contract with a third party; (2) the defendant knowingly interfered with that contract . . . ; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." O'Donnell v. Boggs, 611 F.3d 50, 54

- 5 -

(1st Cir. 2010) (quoting Harrison v. NetCentric Corp., 744 N.E.2d 622, 632 (Mass. 2001)).

The defendants' primary line of attack -- both below and on appeal -- trains on the third element:  whether Carpenter's motive or his means of inducing the breach of Hamann's contract was "improper."  The district court also homed in on this element.  The court found Hamann's allegations of improper motive too conclusory, and it deemed Carpenter's alleged threat to interfere with Scandurra's relationship with Gnutti to be nothing more than "[t]ough negotiating," not amounting to an improper interference.  Hamann, 2019 WL 181284, at *4.

On the former point, we agree.  Massachusetts courts will find the improper motive element met when a defendant exhibits "'actual malice' or 'a spiteful, malignant purpose, unrelated to [a] legitimate corporate interest.'"  Tuli v. Brigham & Women's Hosp., 656 F.3d 33, 43 (1st Cir. 2011) (quoting King v. Driscoll, 638 N.E.2d 488, 494-95 (Mass. 1994)); see also Cavicchi v. Koski, 855 N.E.2d 1137, 1142 (Mass. App. Ct. 2006) ("[E]vidence of retaliation or ill will toward the plaintiff will support the claim.").  On the other hand, the mere desire to benefit oneself or one's principal will not suffice.  See United Truck Leasing Corp. v. Geltman, 551 N.E.2d 20, 24 (Mass. 1990).

Hamann's complaint does manage to claim that "[a]t all relevant times herein, Carpenter bore ill will and spite toward

- 6 -

Hamann, and personally communicated that to [him]." But we concur with the district court that this allegation, standing alone, is too cursory and too conclusory to cross the plausibility threshold. Hamann was well positioned to know of any facts that would plausibly support a finding of Carpenter's ill will towards him rather than a conclusion that Carpenter was motivated merely by his desire to procure the Ferrari for his principal. Yet, Hamann alleges no such facts to support his otherwise too-conclusory parroting of the improper-motive element. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) ("A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." (quoting Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009))); SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

On the district court's latter point, however, we disagree. The district court is generally correct that hard bargaining and lawful competition generally do not amount to impermissible interference under Massachusetts law. See, e.g., Cook & Co. Ins. Servs. v. Volunteer Firemen's Ins. Servs., 657 F. App'x 1, 2 (1st Cir. 2016) ("[C]ompetitive infighting, though

- 7 -

sometimes unattractive, is not per se unlawful"); Am. Private Line Servs., Inc. v. E. Microwave, Inc., 980 F.2d 33, 36 (1st Cir. 1992) ("By courting Cable & Wireless with low prices and atypical services, EMI simply engaged in lawful competition to renew its already existing contract with Cable & Wireless."); Melo-Tone Vending, Inc. v. Sherry, Inc., 656 N.E.2d 312, 315 (Mass. App. Ct. 1995) ("For competition and for the rough and tumble of the world of commerce, there is tolerance, even though the fallout of that rough and tumble is damage to one of the competitors." (citations omitted)); see also Restatement (Second) of Torts § 768 cmt. a (Am. Law Inst. 1979) [hereinafter Restatement] (explaining that competition does not necessarily amount to impermissible interference with a prospective contractual relation). This is primarily true, however, when a plaintiff alleges an interference with a prospective contract or business relationship. Existing contracts, by contrast, seem to receive greater solicitude, enough so that competitive conduct inducing the breach of such a contract might be actionable in at least some circumstances. See United Truck Leasing Corp., 551 N.E.2d at 23 n.6 ("The existence of a contract, and not just the existence of a prospective relationship, might be a factor in determining whether particular intentional conduct was improper."); see also Shafir v. Steele, 727 N.E.2d 1140, 1143 (Mass. 2000) (recognizing that sections 776 and 766B of the Second Restatement of Torts "reflect the law of

- 8 -

Massachusetts"); Restatement, supra, § 767 cmt. j ("[G]reater protection is given to the interest in an existing contract than to the interest in acquiring prospective contractual relations, and as a result permissible interference is given a broader scope in the latter instance.").

In his complaint, Hamann alleges that Carpenter knowingly interfered with Hamann's existing exclusive-seller agreement with Scandurra by incentivizing Scandurra to breach that existing agreement. Whether such economic pressure is improper "depends on the attending circumstances, and must be evaluated on a case-by-case basis." G.S. Enters., Inc. v. Falmouth Marine, Inc., 571 N.E.2d 1363, 1370 (Mass. 1991). In performing that evaluation, Massachusetts courts look to:

> [T]he circumstances in which [the pressure] is exerted, the object sought to be accomplished by the actor, the degree of coercion involved, the extent of the harm that it threatens, the effect upon the neutral parties drawn into the situation, the effects upon competition, and the general reasonableness and appropriateness of this pressure as a means of accomplishing the actor's objective.

Restatement, supra, § 767 cmt. c.

The pressure alleged here went beyond offering Scandurra more money. It included a threat to interfere with Scandurra's relationship with a third party in a manner that would cause Scandurra actual harm. And it caused an apparent loss to yet another third party, Mecum. Moreover, the precise details

surrounding Carpenter's alleged threat are likely to be in the exclusive possession of the defendants and Scandurra. We have declined to require plaintiffs to assemble such additional detail at the motion-to-dismiss stage under analogous circumstances, see, e.g., Am. Sales Co. v. Warner Chilcott Co. (In re Loestrin 24 Fe Antitrust Litig.), 814 F.3d 538, 552 (1st Cir. 2016), and we decline to do so here as well.

In short, Hamann's specific allegation that Carpenter threatened Scandurra with the destruction of another important business relationship with a third party so as to induce Scandurra to breach his existing agreement with Hamann to the detriment of yet another third party suffices to make out a plausible claim that Carpenter engaged in impermissible interference under Massachusetts law. This "create[s] a reasonable expectation that discovery may yield evidence of [Carpenter's] allegedly tortious [interference]." García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).

The defendants also assert that Hamann's complaint should be dismissed on the alternative basis that Hamann has failed to plausibly allege that Carpenter's conduct caused him any damages. The defendants argue that because Scandurra collected more money for the Ferrari by selling it to Carpenter and Wexler, the defendants actually "made it more likely that Hamann would be paid a commission." "If there was not enough of the $12.5 million

- 10 -

sales proceeds left over to pay Hamann," they reason, "then it would have been mathematically impossible for Hamann to receive any commission if the sale [to Mecum] had gone through at $10.5 million." Accordingly, they conclude that Carpenter's alleged inducement of Scandurra's breach could not have caused Hamann's loss of commission because he would not have received one had there been no breach.

Perhaps. But perhaps not. At this stage of the litigation we can accept only the plausible allegation that, as Scandurra's exclusive sales agent, Hamann would have been due a commission from Scandurra and he would have received that commission had the sale to Mecum closed and had Scandurra otherwise honored Hamann's alleged rights as the exclusive agent for the sale of the Ferrari. And as the intermediary between Mecum and Scandurra, Hamann certainly would have been well positioned to protect his alleged right to that commission had the sale of the Ferrari gone through. In any event, given the allegations in the complaint, we cannot conclude that it is implausible that Hamann would have received at least some commission had Scandurra honored his alleged agreement with Hamann. Accordingly, we decline to affirm the district court's dismissal of Hamann's complaint on this alternative basis. See Morales-Villalobos v. Garcia-Llorens, 316 F.3d 51, 55 (1st Cir. 2003) ("[F]actual matter[s] . . . can hardly be resolved on the face of the complaint.").

- 11 -

None of this is to say that Hamann will prevail on this claim. Whether his case advances beyond mere plausibility will likely turn on a necessarily fact-intensive inquiry -- one that is best resolved on a full record, either on a motion for summary judgment or, if warranted, at trial. For pleading purposes, though, it is enough that his allegations "remove the possibility of relief from the realm of mere conjecture." Tambone, 597 F.3d at 442; Twombly, 550 U.S. at 555.

**B.**

We turn now to what Hamann variously calls his claim for tortious interference with an "advantageous business relationship" and tortious interference with a "business expectancy." This labeling of the claim causes some initial confusion because, under Massachusetts law, the tort of interference with an advantageous business relationship apparently includes within its ambit the tort of wrongful interference with an existing contract, and Massachusetts courts "have not consistently distinguished between the two torts." United Truck Leasing Corp., 551 N.E.2d at 23 n.6; see also Blackstone v. Cashman, 860 N.E.2d 7, 12 (Mass. 2007) (defining the tort, in the employment context, as interference with "a present or prospective contract or employment relationship"). Having already addressed Carpenter's alleged interference with Hamann's existing contract with Scandurra, we consider Hamann's attempt to allege an additional tort of

interference only as it might bear on an advantageous business relationship other than that contract. To prevail on this latter tort, Hamann must show that "(1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or [business] relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Blackstone, 860 N.E.2d at 12-13.

Hamann's complaint leaves unclear what prospective contract or business relationship he premises this latter claim upon. The complaint states that the Ferrari was "under contract with a deposit on the way" at the time of Carpenter's alleged interference, potentially indicating that the contract for the sale of the Ferrari from Scandurra to Mecum had yet to be finalized. So, perhaps this is the business relationship or expectancy that he has in mind. Even were we to construe Hamann's allegation in this way, however, we would be left only with a prospective deal (between Mecum and Scandurra) to which Hamann himself was not a party, prospective or otherwise. Moreover, Hamann's complaint contains no allegation that any interference with that prospective deal was the relevant cause of any damages. Rather, on this score, Hamann's complaint states only that "[a]s

- 13 -

a result of the wrongful interference with [Hamann's] contract as exclusive agent for the sale of [the Ferrari], [Hamann] lost a commission of €550,000" (emphasis added). Accordingly, the complaint's reference to the alleged agreement between Mecum and Scandurra, while it may play a role in establishing causation or in calculating damages due from the interference with the alleged exclusive-seller agreement, provides no independent footing for this tortious-interference claim. See Tech Plus, Inc. v. Ansel, 793 N.E.2d 1256, 1262 (Mass. App. Ct. 2003) ("[A] plaintiff [can]not recover on a claim for tortious interference with advantageous relationships where she ha[s] failed to show that she ha[s] suffered any pecuniary loss as a result of the defendant's actions."); see also Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002) ("[W]e are free to affirm [a dismissal] on any basis supported by the record.").

For the foregoing reasons, Hamann's complaint provides too little clarity and too little substance to preserve his common law claims other than his principal claim that Carpenter and those who might be vicariously responsible for his torts (i.e., Copley Motorcars Corporation and Wexner) are liable for tortiously causing Scandurra to breach his exclusive-seller agreement with Hamann.

- 14 -

As the defendants correctly point out, Massachusetts's Consumer Protection Law provides that "[n]o action shall be brought or maintained under [§ 11 of chapter 93A] unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth." Mass. Gen. Laws ch. 93A, § 11. The defendants aver that we should dismiss Hamann's Chapter 93A claim for Hamann's failure to allege that the defendants' tortious conduct occurred "primarily and substantially within Massachusetts."

Hamann's complaint does not include any factual allegation linking Carpenter's tortious conduct to Massachusetts. Instead, it unhelpfully observes that "[a]t all relevant times herein, Carpenter has engaged in business within the State of Connecticut, buying, selling, and leasing cars." And on appeal, Hamann provides no response to the defendants' assertion that we should dismiss his Chapter 93A claim on this basis. Accordingly, we deem any argument Hamann may have had on this score waived. See Doherty v. Merck & Co., 892 F.3d 493, 501 (1st Cir. 2018).

## III.

Whether the evidence will result in a verdict for Hamann, or even survive a motion for summary judgment, we cannot say at this juncture. As is often the case with the notice pleading

allowed by Federal Rule of Civil Procedure 8(a), many questions remain. What exactly were the terms of the alleged exclusive-seller agreement? What exactly did Carpenter say to Scandurra? And what would have happened but for that communication? We now decide only that Hamann has plausibly pleaded that Carpenter harmed Hamann by tortiously interfering with a contract between Hamann and Scandurra. We therefore <u>reverse</u> the district court's dismissal of Hamann's claim of tortious interference with a contractual relationship and <u>remand</u> for further proceedings consistent with this opinion. However, we <u>affirm</u> the district court's dismissal of Hamann's other tort and Chapter 93A claims. Costs are awarded to Thomas Hamann.