# United States Court of Appeals
## For the First Circuit

No. 19-1458

JANE DOE, a minor in and for her own behalf and in her own right; MARY DOE, parent and next friend of Jane Doe, a minor and in her own right,

Plaintiffs, Appellants,

v.

PAWTUCKET SCHOOL DEPARTMENT; CITY OF PAWTUCKET, RHODE ISLAND; PATTI DECENSO, individually and in her official capacity as Superintendent of Pawtucket School Department; PAWTUCKET SCHOOL COMMITTEE; GERARD CHARBONNEAU, in his capacity as Chairman of Pawtucket School Committee; MICHAEL ARAUJO, in his capacity as Pawtucket School Committee Member; JOANNE M. BONOLLO, in her capacity as Pawtucket School Committee Member; ERIN M. DUBE, in her capacity as Pawtucket School Committee Member; JOHN J. CROWLEY, in his capacity as Pawtucket School Committee Member; JOSEPH KNIGHT, in his capacity as Pawtucket School Committee Member; ELENA VASQUEZ, in her capacity as Pawtucket School Committee Member; LINDA GIFFORD, individually and in her official capacity as school principal of Pawtucket Learning Academy; SHAUN W. STROBEL, in his capacity as Pawtucket City Treasurer; DAVID MORTON, in his individual and official capacity as a teacher and member of the Pawtucket Learning Academy; KAREN DUBE, in her individual and official capacity as a teacher and member of the Pawtucket Learning Academy; ELIZABETH VELIS, in her individual and official capacity as a teacher and member of the Pawtucket Learning Academy; LEE RABBIT, in her individual and official capacity as a teacher and member of the Pawtucket Learning Academy; KERRI DAY, in her individual and official capacity as a teacher and member of the Pawtucket Learning Academy; SUSAN HALL, in her individual and official capacity as a teacher and member of the Pawtucket Learning Academy; MICHAELA FRATTARELLI, in her individual and official capacity as a teacher and member of the Pawtucket Learning Academy; CHRISTOPHER SWICZEWICZ, in his individual and official capacity as a teacher and member of the Pawtucket Learning Academy; THOMAS J. ANDERSON, in his individual and official capacity as a teacher and member of the Pawtucket Learning Academy,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., Chief U.S. District Judge]

Before

Lynch, Kayatta, and Barron,
Circuit Judges.

George Patrick Hovarth, Law Offices of Hovarth & Hovarth, and Edward John Mulligan on brief for appellants.

Jon Mason Anderson, Brennan, Recupero, Cascione, Scungio, & McAllister, LLP, Patrick Kelly Cunningham, Marc DeSisto, DeSisto Law LLP, Sara Rapport, Whelan, Corrente, Flanders, Kinder & Siket LLP, Patrick J. McBurney, Matthew Christopher Reeber, Pannone Lopes Devereaux & O'Gara LLC, Mark P. Dolan, and Rice Dolan & Kershaw on brief for appellees.

August 6, 2020

**KAYATTA**, **Circuit Judge**.  Plaintiff Jane Doe has alleged that she was the victim of several incidents of sexual assault and harassment while she was a student at the Pawtucket Learning Academy ("PLA") in Pawtucket, Rhode Island.  The district court granted the defendants' motion to dismiss all of Doe's claims, and Doe appealed.  Because Doe's allegations, if true, tell a plausible story of deliberate indifference by school officials to repeated and severe sexual harassment, we vacate the dismissal of her claim for a violation of Title IX, 20 U.S.C. § 1681 et seq., and allow a somewhat narrowed version of it to proceed on remand.  We affirm the district court's dismissal of the other claims, as well as the dismissal of all claims against the individual defendants.

## I.

On this review of a dismissal under Rule 12(b)(6), "we take the nonconclusory, nonspeculative facts contained in the complaint as true and draw all reasonable inferences from those facts in [Doe's] favor."  Hamann v. Carpenter, 937 F.3d 86, 88 (1st Cir. 2019).

During 2016 and 2017, Doe attended the Pawtucket Learning Academy, a public school operated by the Pawtucket School Department.  PLA had only approximately seventy students when Doe attended.  The school's six classrooms for grades 6 through 12, the teachers, and a few staff members were all on one floor.

For the most part, Doe's complaint contains many general allegations that are too conclusory and/or contingent to make out a viable claim. She repeatedly employs broad general terms such as "sexual assault[]" and "molestation[]" without specifics. And she speculates that school officials had "knowledge or ought to have had knowledge" (emphasis added) of various occurrences. Regarding several serious events, though, she does allege actual facts.

First, in April 2016, in her physical education class "a male gym student . . . got behind Minor Plaintiff, and simulated sexual fornication by rubbing his genitalia area against the Minor Plaintiff's clothed anal area, in front of the gym teacher and class. At that time, she and/or the school contacted the police."

Second, Doe alleges that she was raped by a seventeen-year-old PLA student named Adriel in May 2016. Adriel entered Doe's classroom, started talking to another older student and to Doe, and the three left the room, apparently without any response or interference from the instructor. Adriel "pushed, guided and/or forced" Doe into a bathroom and raped her. Doe alleges that rumors about the incident spread throughout the school, and the day afterward, school principal Linda Gifford said to her, "I heard you had sex with Adriel?" The thirteen-year-old Doe responded, "yes." The school took no measures in response.

In June 2017, Doe was raped by an adult PLA student, Ivander DeBurgo, whom Doe says had raped another female student previously. Doe alleges that while she and two other students were in a math class with a teacher after normal school hours, DeBurgo repeatedly entered the classroom and tried to entice her to leave with him. When the teacher told DeBurgo to leave, DeBurgo ignored the instruction, and no steps were taken to ensure his departure from the building or limit his access to Doe within the building. Roughly an hour later, Doe left the classroom to use the restroom. Shortly thereafter, the school secretary found her huddled under the bathroom sink, having just been raped by DeBurgo. The principal, the assistant principal, the assistant superintendent, and the school superintendent learned of the rape that afternoon. Their immediate reaction was to escort both DeBurgo and Doe out of the building. They took no statements, nor did they contact the police. Doe was left to fend for herself with DeBurgo, who had already threatened her with further harm. The next morning, the school resource officer learned of the rape from students and contacted the police. At that point, Doe was placed "under escort" and spoke to the school social worker, Karen Dube, who told her she could "put her concerns in writing." Doe told Dube that she was worried about retaliation, and Doe alleges that Dube was aware of threats against her by DeBurgo and his

- 5 -

friends.  DeBurgo was ultimately convicted of rape and sexual molestation against Doe in Rhode Island state court.

Finally, Doe alleges that in April 2017 a member of the PLA faculty, David Morton, approached Doe in the school hallway while she was riding "piggy back" with another student, and "smacked and grabbed her butt."  In the months before his assault on Doe, Morton had touched the inner thighs of other students and made sexual remarks to them.  Doe alleges that the superintendent, assistant superintendent, principal, and assistant principal had known about these previous events "for some time," and even that other teachers were sometimes present in the room when they took place.  Doe filed a criminal complaint against Morton, who was eventually charged with misdemeanor assault.

As a result of all this, Doe alleges that she "suffered emotional distress, post-rape traumatic syndrome, post traumatic syndrome, [and] has needed medical care and attention."  She has also "needed to be transferred to a school system outside of the Pawtucket School System."

## II.

After three amendments, Doe's complaint marshaled five sets of allegations collectively said to establish actionable claims against twenty-one defendants under sixteen different counts. The district court duly undertook the task of looking for some wheat hidden in this basket of chaff, eventually finding none

- 6 -

and dismissing the entire action. On appeal, plaintiffs have discovered the virtue of focus, but see infra subsection II.B., and trained our attention on Count One of their Third Amended Complaint, Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688.

## A.

Title IX creates an implied private right of action against federal funding recipients for money damages caused by a recipient's violation of its obligations under the Title. Franklin v. Gwinnett Cnty. Pub. Schs., 503 U.S. 60, 76 (1992); see also Cannon v. Univ. of Chi., 441 U.S. 677, 717 (1979). Such a violation can occur when a Title IX funding recipient is deliberately indifferent to known acts of sexual harassment of a student by a teacher. See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 287–88, 290 (1998). Such a violation can also occur when a Title IX funding recipient is deliberately indifferent to known acts of harassment in its programs or activities, including severe and pervasive acts of harassment perpetrated by fellow students in circumstances under the recipient's substantial control. Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 644–46, 650 (1999) (finding liability "where [the district is] deliberately indifferent to sexual harassment, of which [it has] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to

the educational opportunities or benefits provided by the school").

In reviewing the sufficiency of a complaint under Rule 12(b)(6), our analysis turns on whether the complaint plausibly alleges that the plaintiff suffered harassment or assault that met the standards set out above.  In other words, we simply assume that well-pleaded facts are true and ask whether such facts and inferences reasonably drawn from those facts plausibly state a claim.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (requiring "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))).  We review the district court's analysis of the defendants' motion de novo. Penate v. Hanchett, 944 F.3d 358, 365 (1st Cir. 2019).

We agree with the defendants and the district court that Doe's complaint does not allege facts that make plausible any claim that school district officials were deliberately indifferent to her harassment up to the date of her encounter with Adriel.  We can fairly infer from the fact that the police were called to the school after the incident in gym class that the school officials had actual knowledge of that incident after the fact.  But the immediately ensuing police presence at the school suggests that school officials did take responsive action, and Doe develops no argument for why their response was so unreasonable as to

demonstrate deliberate indifference to her harassment. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). And as for Doe's more general allegations of assault leading up to that point, she has failed to allege that any school official had actual knowledge of them: The complaint avers only that the "superintendent and principal and other teachers" "ha[d] knowledge or ought to have had knowledge" of the events. Such constructive knowledge is plainly insufficient. See Gebser, 524 U.S. at 290 (requiring actual notice to an "appropriate person," 20 U.S.C. § 1682, who is "an official of the recipient entity with authority to take corrective action to end the discrimination").

That brings us to the alleged rape by Adriel in the school bathroom. The complaint specifically alleges that when asked by the principal whether she had sex with Adriel, Doe told her that she did. And the complaint alleges that the principal did nothing in response to learning that information. The defendants do not dispute that a failure to take some action to reduce the likelihood of further harassment would serve as evidence of deliberate indifference. They instead argue that the school had no notice of the rape. In particular, they maintain that Doe denied having sex with Adriel when the principal asked her about it and that her allegation to the contrary is implausible because,

had the principal known of such sexual contact with a thirteen-year-old, she would have jumped into action to deal with it.

We agree with defendants that a school principal not indifferent to the situation would have certainly responded in some way to reduce the likelihood of any repetition. So if we were to assume that the principal was not indifferent to Doe's plight, the fact that the principal did nothing would suggest that she was unaware of any sexual contact, as she claims. But in reviewing the adequacy of a complaint, we cannot assume that the principal was not indifferent. That is a matter of proof, not assumption. See Hamann, 937 F.3d at 88 (explaining that on a motion to dismiss, we take all reasonable inferences from the factual allegations in the plaintiff's favor). To proceed, instead, as defendants urge would be to assume away the case -- and other such cases -- by deeming the inactions of an allegedly indifferent person to be proof that the person was not indifferent.

The defendants also point to medical and police reports supposedly showing that Doe denied having had sex with Adriel. In ruling against Doe, the district court also relied on those two reports, describing them as showing Doe's "denying [to the principal and others] that anything sexual had taken place."

The district court's reliance on those reports was twice-flawed. First, a motion to dismiss under Rule 12(b)(6) generally provides no occasion upon which to consider documents

other than the complaint.  There are exceptions, to be sure.  See Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 231 (1st Cir. 2013) (allowing the court to review "any documents attached to the complaint or incorporated by reference therein"); Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (holding that the court may consider a document "integral to or explicitly relied upon in the complaint, even though not attached to the complaint" (quoting Shaw v. Digit. Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996))); Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998) (explaining that when "a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)"); see also Flores v. OneWest Bank, F.S.B., 886 F.3d 160, 167 (1st Cir. 2018) (explaining the extent of the possible exceptions).  But none of those exceptions applied here:  The medical and police reports are not expressly referenced in the complaint, the complaint does not rely upon them or incorporate them, and the allegations in the complaint are not "dependent" upon their contents.  Second, even were it proper to consider the reports, nothing in them makes it implausible that Doe told the principal what she alleges.  Nor do they directly

contradict the allegations in the complaint in any other way.[1] Even if they did purport to include a direct denial from Doe, we would have a battle of proof and credibility, not a failure to allege a claim.

Doe does not allege that the principal knew the sex between Doe and Adriel was forced; however, at the time of the rape Doe was thirteen and Adriel was seventeen. Given the age difference, and the fact that the principal likely knew that Doe had been previously subjected to an assault in gym class serious enough to warrant a visit by the police to the school, Doe may be able to make the case that once they learned of the sexual encounter with Adriel, school officials not indifferent to the abuse would have investigated or recognized Doe's apparent vulnerability to sexual assault and made at least some attempt to protect her going forward. This is an allegation of a failure "to take corrective action." Gebser, 524 U.S. at 290.

---

[1] The police report states that Gifford told police that Doe had "denied anything sexual happening." There is no indication of Doe admitting that she had denied it, however, and the complaint clearly alleges the opposite. The district court may not take Gifford's word above Doe's at the pleading stage.

As for the medical report, we are unable to locate any admission by Doe that she denied anything sexual had taken place with Adriel. The report does reflect Doe saying that Adriel had "touched her over and under her clothes with his hand." That is hardly a statement that she was not raped, or an admission that she failed to tell PLA staff about it.

The deliberate indifference standard of course requires that the funding recipient's actions -- or failure to act -- caused the student's subsequent harassment in some way or made the student "liable or vulnerable" to harassment.  Davis, 526 U.S. at 645; see also Fitzgerald v. Barnstable Sch. Comm., 504 F.3d 165, 172-73 (1st Cir. 2007) (noting that the standard in Davis "sweeps more situations" than simple but-for causation and reasoning that a complaint "theoretically could form a basis for Title IX liability" where "post-notice interactions between the victim and the harasser have been alleged"), rev'd on other grounds, 555 U.S. 246 (2009).  So there could be no causal connection between Doe's rape by Adriel and the school officials' subsequent alleged indifference to it.  The school therefore bears no liability for directly causing that abuse, at least under Title IX.[2]  On the other hand, Doe may be able to make out a claim under Title IX based on the school's indifference from that point forward to her demonstrated vulnerability to abuse by older male students.  For instance, she may be able to show that, had the school behaved as Title IX demands, DeBurgo's subsequent repeated improper entries into her classroom in the presence of a teacher would have been

---

[2] However, even if the events of April and May 2016 do not themselves provide a basis for a cause of action, they may still be considered as evidence with respect to the Title IX claims that do survive.

dealt with very differently, frustrating DeBurgo's attempt to rape her in the school.

It is true that funding recipients are not required to have perfect foresight or manage all student interactions expertly.  See Davis, 526 U.S. at 648 (permitting liability only where a funding recipient's "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances"); see also id. at 649 ("This is not a mere 'reasonableness' standard . . . ."); Porto v. Town of Tewksbury, 488 F.3d 67, 74 (1st Cir. 2007) (requiring that deliberate indifference not be evaluated by hindsight).  But here, by failing to take any action to stem the tide of assaults against Doe, it is plausible that PLA officials "'disregarded a known or obvious consequence of [their] action' or inaction" and thus contributed to her likelihood of sexual assault and rape.  Porto, 488 F.3d at 73 (emphasis omitted) (quoting Bd. of the Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997)).  How this fleshes out in discovery remains to be seen.

The defendants additionally argue that the student-on-student harassment Doe faced was not sufficiently severe and pervasive to create Title IX liability.  See Davis, 526 U.S. at 651.  But Doe has alleged that she was assaulted in physical education class and then raped two times in the subsequent months -- hardly a case of a one-off interaction with a rogue student, or

- 14 -

mere childish teasing.  See Morgan v. Town of Lexington, 823 F.3d 737, 745 (1st Cir. 2016) (finding "pulling down of [the plaintiff's] pants" to be mere "bullying" and not sufficiently "severe"); see also Davis, 526 U.S. at 652 (explaining that teasing and bullying are not sufficient to create a Title IX claim).  Harassment need only be severe enough to "undermine[] and detract[] from the victim's educational experience" such that the victim is "effectively denied equal access to an institution's resources and opportunities."  Davis, 526 U.S. at 651.  There is no requirement that the victim entirely leave the recipient's programs immediately in order to have a viable Title IX claim, nor is there anything in Doe's complaint that requires us to infer that her educational experience was not undermined.  To the contrary, Doe alleges that she "suffered emotional distress, post-rape traumatic syndrome, post traumatic syndrome, [and] has needed medical care and attention."

Beyond the student-on-student assaults that Doe has alleged, she also tries to plead that an assault by PLA teacher David Morton violated her Title IX rights.  Doe has alleged that Morton repeatedly harassed or assaulted other students; that four different identified school officials knew of the incidents (the superintendent, assistant superintendent, principal, and assistant principal) "for some time"; and that the school did nothing to prevent Morton from sexually assaulting Doe as well.  Put simply:

If the allegations are true, PLA had ample notice of Morton's behavior, and it failed to do anything about it.

The defendants argue that Morton's assault on Doe was nevertheless not sufficiently severe or pervasive to form the basis of Title IX liability, citing a handful of roughly similar district-court cases. See Francoeur v. D.L., No. 3:15cv953, 2017 WL 4247385, at *6 (D. Conn. Sept. 25, 2017) (addressing student-on-student harassment); DeCecco v. Univ. of S.C., 918 F. Supp. 2d 471, 511–12 (D.S.C. 2013) (finding that one instance of sexual touching by a college athletic coach was not severe or pervasive); Gregg v. N.Y. State Dep't of Tax'n & Fin., No. 97 CIV. 1408, 1999 WL 225534, at *12 (S.D.N.Y. Apr. 19, 1999) (addressing severity and pervasiveness in the workplace under Title VII).

Our controlling precedent primarily discusses the severity and pervasiveness requirement in the context of student-on-student harassment. See, e.g., Davis, 526 U.S. at 651–53; Morgan, 823 F.3d at 745. While Gebser does not expressly address severity and pervasiveness in the context of teacher-on-student harassment, see 524 U.S. at 290–92, some degree of severity or pervasiveness must be present in order for harassment to result in "exclu[sion]" or "discrimination" under Title IX, 20 U.S.C. § 1681(a) ("No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected

- 16 -

to discrimination under any education program or activity receiving Federal financial assistance . . . .").

Conduct that might not be actionable under Title IX if perpetrated by a student might be deemed more likely to exclude, or discriminate against, the potential targets of the conduct if perpetrated by a person in authority. Here, we have an allegation that the school allowed a male teacher to touch numerous female students on the thighs and buttocks with impunity. If that is the case, then it is plausible that, depending on how the details develop in discovery, a factfinder could find the conduct severe and pervasive enough to result in excluding, or discriminating against, a victim of that behavior.

Additionally, Doe's complaint challenges the cumulative impact of the various assaults upon her during her tenure at PLA, with the assault by the teacher coming after the DeBurgo rape, finally leading to her removal from the school. Intentionally (it is alleged) leaving a student-groping teacher in a small six-room school in which a young female student had already been subjected to three sexual assaults might be viewed by a factfinder -- depending on the other evidence that develops -- as further evidence of the school's deliberate indifference to the nature of the student's plight and the resulting severity and pervasiveness of the abuse.

**B.**

There are two other loose ends to tie up -- Doe's claims under state law and 42 U.S.C. § 1983, and the applicability of Doe's claims to the individual defendants. As to the latter, Doe has conceded she is not pursuing any Title IX claims against any individuals, nor could she. See Davis, 526 U.S. at 641 ("The government's enforcement power may only be exercised against the funding recipient, and we have not extended damages liability under Title IX to parties outside the scope of this power." (internal citation omitted)). As to the former, Doe's opening brief on appeal presented no argument at all for challenging the dismissal of her state law and § 1983 claims. She therefore has waived any such challenge. See United States v. Tosi, 897 F.3d 12, 15 (1st Cir. 2018) ("[A]rguments available at the outset but raised for the first time in a reply brief need not be considered."); United States v. Torres, 162 F.3d 6, 11 (1st Cir. 1998); see also Walsh v. TelTech Sys., Inc., 821 F.3d 155, 162 n.4 (1st Cir. 2016) (holding that an argument for emotional-distress damages raised for the first time in a reply brief is waived).[3] What remains are only Doe's Title IX claims against the City of Pawtucket and the Pawtucket School Department for damages resulting from the

---

[3] We therefore also deny as moot Defendants' motion seeking to strike from Doe's reply brief a belated attempt to revive her state law and § 1983 claims.

- 18 -

school's alleged deliberate indifference commencing with its reaction to the first alleged rape.

## III.

For the reasons explained above, we vacate in part the entry of judgment against Doe on her Title IX claim against the City and its school department, and we otherwise affirm the dismissal of Doe's claims. Each party shall bear their own costs.