# United States Court of Appeals
## For the First Circuit

No. 20-1332

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO SALES TAX FINANCING CORPORATION, a/k/a Cofina; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

Debtors.

UNIÓN DE TRABAJADORES DE LA INDUSTRIA ELÉCTRICA Y RIEGO (UTIER),

Petitioner, Appellant,

v.

JOSÉ F. ORTIZ-VÁZQUEZ; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, AS REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA),

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Laura Taylor Swain, U.S. District Judge]

———————————————

Before

Lynch, Kayatta, and Barron,
<u>Circuit Judges</u>.

———————————————

<u>Guillermo Ramos-Luiña</u> on brief for appellant.
<u>Timothy W. Mungovan</u>, <u>John E. Roberts</u>, <u>Martin J. Bienenstock</u>,
<u>Stephen L. Ratner</u>, <u>Jonathan E. Richman</u>, <u>Mark D. Harris</u>, <u>Shiloh
Rainwater</u>, and <u>Proskauer Rose LLP</u> on brief for appellees.

———————————————

January 15, 2021

———————————————

**LYNCH**, **Circuit Judge**. In this appeal from the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") Title III court in Puerto Rico, the sole remaining question is whether that court appropriately dismissed the petitioner's mandamus petition for failure to state a claim. The petition alleges that the Puerto Rico Electric Power Authority ("PREPA") violated two provisions of a Puerto Rican statute when PREPA announced that it would increase some medical co-pays while decreasing others in order to comply with its certified fiscal plan. The petitioner, Unión de Trabajadores de la Industria Eléctrica y Riego ("UTIER"), which represents the employees of PREPA, seeks to compel PREPA to comply with what it says are the requirements of Act No. 26-2017, P.R. Laws Ann. tit. 3, §§ 9461 et seq. The Title III court concluded that UTIER did not meet its burden of showing that there were no adequate alternative remedies, which is a precondition for mandamus relief. We agree and affirm.[1]

I.

In 2016, Congress enacted PROMESA, 48 U.S.C. §§ 2101 et seq., which established the Financial Oversight and Management Board ("FOMB") to help address the fiscal emergency in Puerto Rico. Id. § 2121; see also id. § 2194(m); Municipality of San Juan v.

---

[1] Because UTIER did not request oral argument and the Financial Oversight and Management Board expressly requested that the case not be orally argued, this case was taken as submitted on the briefs.

Puerto Rico, 919 F.3d 565, 568 (1st Cir. 2019); In re Fin. Oversight & Mgmt. Bd. for P.R., 916 F.3d 98, 103-04 (1st Cir. 2019). The FOMB is authorized to review and certify all budgets and long-term fiscal plans for the Commonwealth and its covered instrumentalities, such as PREPA, to achieve fiscal responsibility and access to capital markets. 48 U.S.C. §§ 2121(a), (d), 2141-2142; see also In re Fin. Oversight & Mgmt. Bd. for P.R., 916 F.3d at 104. The FOMB's decision to certify a budget or fiscal plan is not subject to judicial review. 48 U.S.C. § 2126(e); see also In re Fin. Oversight & Mgmt. Bd. for P.R., 916 F.3d at 112.

The FOMB is also authorized to file, and has filed, on behalf of the Commonwealth and its covered instrumentalities a Title III petition in federal district court for debt restructuring. 48 U.S.C. §§ 2146, 2164(a), 2168(a); see also In re Fin. Oversight & Mgmt. Bd. for P.R., 954 F.3d 1, 5-6 (1st Cir. 2020); Municipality of San Juan, 919 F.3d at 571; In re Fin. Oversight & Mgmt. Bd. for P.R., 916 F.3d at 104. In such a Title III case, creditors are authorized to assert claims against the Commonwealth and its covered instrumentalities. See 48 U.S.C. § 2161(a); see also 11 U.S.C. § 101(5) (defining the term "claim" for purposes of bankruptcy proceedings); id. § 501(a) (providing that a creditor may file a proof of claim); In re Fin. Oversight & Mgmt. Bd. for P.R., 954 F.3d at 5-6 (explaining that PROMESA incorporates sections of the United States Bankruptcy Code and

- 4 -

makes them applicable in Title III cases); Municipality of San Juan, 919 F.3d at 571 (same).

PREPA is a public corporation responsible for providing reliable electric power to the citizens of Puerto Rico and managing Puerto Rico's energy resources. P.R. Laws Ann. tit. 22, § 196. UTIER is a labor organization that represents more than three thousand employees of PREPA.

In April 2017, the Puerto Rico legislature enacted Act No. 26-2017, known as the "Fiscal Plan Compliance Act" ("Act 26" or "the Act"). H.B. 938, 18th Leg. Assemb. (P.R. 2017), 2017 P.R. Leyes 26 (codified as amended at P.R. Leyes An. tit. 3, §§ 9461 et seq.).[2] The Act was designed to implement the fiscal plan certified by the FOMB in March 2017. Among other things, the Act addressed health insurance and other benefits provided to employees by Commonwealth employers. UTIER attempts to assert mandamus claims as to Article 2.07 of Act 26, which is titled "Uniform Employer Contribution to Public Corporation Employees Health Plan." See P.R. Leyes An. tit. 3, § 9477.

Article 2.07 of the Act provides that "[t]he Executive and Legislative Branches will identify additional savings and resources to avoid affecting employee contributions to the payment

---

[2] There is currently no official English translation of the codified statute, and so we rely on the certified English translation of the Act provided by the parties in their appendix.

of health plans" ("the Savings Provision"). It also provides that "any employee of a public corporation or dependent who is currently enrolled in the health plan and who suffers from a catastrophic, chronic, or pre-existing terminal illness will keep unaltered the current employer's health insurance contribution for as long as he remains linked to public service" ("the Pre-existing Conditions Provision").[3] Act 26 does not define what constitutes a "catastrophic" illness. The FOMB does not challenge UTIER's assertion that the definition of "catastrophic" illnesses is provided in a later Act, Act No. 28-2018, titled the "Special Leave for Employees with Serious Diseases of a Catastrophic Nature Act"

---

[3] In PREPA's motion before the Title III court to dismiss UTIER's petition for a writ of mandamus, PREPA quoted a slightly different translation of Article 2.07 than the certified English translation provided elsewhere in the record. In that motion, PREPA quoted the English translation of the Savings Provision as stating "[t]he Executive and Legislative Branches shall identify additional savings and resources to prevent adversely affecting the employees' contributions to the payment of the healthcare plan," and the Pre-existing Conditions Provision as stating

> every employee, or dependent thereof, of a public corporation who is currently enrolled in the healthcare plan and who suffers from a preexisting catastrophic, chronic, or terminal illness shall continue to receive the employer contribution in effect for his healthcare plan, without any change, for the term he remains in the public service.

The Title III court relied on this translation of the Savings and Pre-existing Conditions Provisions in its decision dismissing the petition for writ of mandamus. See In re Fin. Oversight & Mgmt. Bd. for P.R., 435 F. Supp. 3d 377, 382-83 (D.P.R. 2020). For purposes of this appeal, there is no material difference between the two translations of Article 2.07 of the Act.

("Act 28"), which contains a list of conditions defined as "Serious Illness[es] of a Catastrophic Nature" for purposes of a "Special Leave" provision for employees suffering from such illnesses. S.B. 461, 18th Leg. Assemb. (P.R. 2018), 2018 P.R. Leyes 28 (codified as amended at P.R. Leyes An. tit. 29, §§ 508 et seq.).[4]

In July 2017, the FOMB filed a Title III debt-restructuring case on behalf of PREPA as a covered instrumentality pursuant to 48 U.S.C. § 2164(a). In September 2018, the FOMB certified a budget for PREPA for fiscal year 2019, which allocated $120,888,000 for PREPA's employee pensions and benefits. In December 2018, the FOMB approved a contract between PREPA and Triple-S Salud Inc. for Triple-S Salud to act as PREPA's employee health-plan administrator for 2019. On December 28, 2018, PREPA's then-Chief Executive Officer, José Ortiz-Vázquez ("Ortiz"), circulated a memorandum to all PREPA employees announcing changes to the employees' health insurance plans effective January 1, 2019. The memorandum stated that PREPA would continue its prior policy of the employees not being required to contribute a payment to the cost of their health insurance and that their coverage would remain unaltered. It also stated that "to meet the financial challenges of [PREPA's] Certified Fiscal Plan, some changes were required in

---

[4] There is also currently no official English translation of this codified statute, and so we rely on the certified English translation provided by the parties in their appendix.

deductibles and co-pays."  A table attached to the memorandum showed that co-pays in some instances were increased, while in other instances they were decreased.[5]

On April 24, 2019, UTIER commenced this action in a Puerto Rico court.  The FOMB, on behalf of PREPA and Ortiz, removed it to the federal Title III court on May 8, 2019.  UTIER alleged that PREPA violated Article 2.07 of Act 26 by (1) failing to "identify savings and additional resources to avoid affecting the contributions of the employees for the payment of health plans" and (2) failing to ensure that employees and their dependents who suffer from pre-existing catastrophic, chronic, or terminal diseases continue to receive the same employer contribution for the entire term of their public employment.  UTIER argued that as a result of the changes to the employee health insurance plans, employees suffering from serious pre-existing conditions would "now pay substantially higher sums" than before.  UTIER sought a writ of mandamus compelling PREPA and Ortiz to comply with the Savings and Pre-existing Conditions Provisions of Article 2.07 of Act 26.

---

[5]    Although the memorandum also said there were some changes in deductibles and UTIER claims that its members' deductibles were modified, neither the memorandum nor UTIER's petition for writ of mandamus identified specifically any such changes.  The table attached to the memorandum also showed both increasing and decreasing co-insurance percentages, but UTIER provides no specific allegations concerning those changes.

The FOMB filed a motion to dismiss the mandamus petition for lack of jurisdiction and failure to state a claim. The Title III court took briefing on the issues from both sides. On January 23, 2020, the Title III court issued its decision granting the FOMB's motion and dismissing the petition. In re Fin. Oversight & Mgmt. Bd. for P.R., 435 F. Supp. 3d 377, 387-88 (D.P.R. 2020). First, the court held that, "to the extent that the Petition s[ought] to challenge the [FOMB]'s determination that the [2019 PREPA] Budget is compliant with a fiscal plan which meets the requirements of" PROMESA, the court lacked subject matter jurisdiction because of the jurisdictional bar of 48 U.S.C. § 2126(e).[6] Id. at 385. Second, "to the extent that the Petition ask[ed] that [PREPA] be directed to comply with duties imposed by a Commonwealth statute and plausibly allege[d] that such compliance is inconsistent with PREPA's certified Budget," the court held that UTIER failed to state a plausible claim for mandamus relief because it did not allege there was no other adequate alternative remedy available. Id. at 385-87. The court held, and UTIER does not contest, that the PREPA employees represented by UTIER could assert financial claims against PREPA

---

[6] UTIER has made clear on appeal that it does not intend its action to be a challenge to the FOMB's certification of PREPA's 2019 budget, given that any such challenge would raise the jurisdictional bar set forth in 48 U.S.C. § 2126(e). We focus only on the Title III court's decision to dismiss the mandamus petition for failure to state a claim.

as creditors to a Title III debtor under PROMESA. Id. at 386. The court also rejected as unsupported UTIER's argument that an adequate alternative remedy exists for purposes of denying a writ of mandamus only if the alternative remedy is provided by the same statute the petitioner seeks to enforce. Id. at 386-87. The court did not address the FOMB's alternative arguments for dismissal of the mandamus petition. Id. at 385 n.8.

UTIER timely appealed. We address only the single remaining issue.

## II.

UTIER challenges the Title III court's conclusion that it failed to meet its burden of showing there are no adequate alternative remedies which would allow its use of mandamus. None of the arguments advanced on appeal have merit.[7]

---

[7] As an initial matter, we reject UTIER's argument that the district court engaged in an impermissible "sua sponte" dismissal of its mandamus petition. The Title III court dismissed the mandamus petition only after the FOMB had filed a motion to dismiss for failure to state a claim and the motion had been fully briefed, and the fact that the court relied on cases not cited in the parties' briefs was not improper and did not make its dismissal of the mandamus petition sua sponte. See, e.g., Goya Foods, Inc. v. Unanue, 233 F.3d 38, 45 & n.7 (1st Cir. 2000) (citing cases not cited by the parties); Bay State HMO Mgmt. v. Tingley Sys., Inc., 181 F.3d 174, 180-82 (1st Cir. 1999) (relying on a case not cited by the parties).

Also in its brief, UTIER makes the cursory argument that Act 26 is unconstitutional under the Contracts Clause, U.S. Const. art. I, § 10. UTIER does not develop this argument and so it is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

We review de novo the district court's analysis of a motion to dismiss for failure to state a claim, taking all well-pleaded facts as true and determining whether those facts and the inferences reasonably drawn therefrom plausibly state a claim. Doe v. Pawtucket Sch. Dep't, 969 F.3d 1, 7 (1st Cir. 2020) (first citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); and then citing Penate v. Hanchett, 944 F.3d 358, 365 (1st Cir. 2019)).

A writ of mandamus is an extraordinary remedy that is available only when certain conditions are met, and this is true under both federal and Puerto Rico law.[8] See, e.g., Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988); In re Cargill, Inc., 66 F.3d 1256, 1259 (1st Cir. 1995); Purcell Ahmed v. Pons Núñez, 129 P.R. Dec. 711, 714 (1992). "[T]he party seeking mandamus has the 'burden of showing that its right to issuance of the writ is "clear and indisputable."'" Gulfstream Aerospace Corp., 485 U.S. at 289 (quoting Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384 (1953)).

Under both federal and Puerto Rico law, the party seeking mandamus relief must demonstrate that there are no adequate alternative remedies available. See Mallard v. U.S. Dist. Ct. for

---

[8] UTIER assumes that the question of mandamus relief is governed by Puerto Rico law, and both parties cite Puerto Rico law with respect to mandamus in their briefs. We do not have to address this assumption because the outcome here is the same whether Puerto Rico or federal law applies.

S. Dist. of Iowa, 490 U.S. 296, 309 (1989) ("To ensure that mandamus remains an extraordinary remedy, petitioners must show that they lack adequate alternative means to obtain the relief they seek . . . ." (collecting cases)); Wilson v. Sec'y of Health & Hum. Servs., 671 F.2d 673, 679 (1st Cir. 1982) ("[I]t is apparent to us that this 'extraordinary' statutory remedy [of mandamus under 28 U.S.C. § 1361] is inappropriate, both because appellant has failed to meet the showing of exceptional circumstances required by [Supreme Court cases and First Circuit cases] and because an alternative remedy -- through administrative proceedings and [review under a different statutory provision] -- was available." (citations omitted)); Matos v. Sec'y of Health, Educ. & Welfare, 581 F.2d 282, 286 n.6 (1st Cir. 1978) (noting that "the extraordinary remedy of mandamus . . . might be available in those extreme situations where no other remedy was available"); Hernández Agosto v. Romero Barceló, 12 P.R. Offic. Trans. 508, 521 (1982) (stating that, applying Puerto Rico law, "the writ of mandamus is the appropriate remedy for compelling performance of a duty allegedly imposed by law . . . when there is no other adequate remedy at law"); see also P.R. Laws Ann. tit. 32, § 3423 ("This writ may not be issued in any case where there is plain and adequate remedy in the ordinary course of the law.").

UTIER does not argue that its members cannot assert financial claims against PREPA in PREPA's Title III case for

alleged overpayments in health insurance, nor does it argue that this alternative mechanism for relief under PROMESA is somehow inadequate.

Rather, UTIER's sole argument is that Act 26 does not contain a mechanism for compelling PREPA to comply with the Savings and Pre-existing Conditions Provisions of Article 2.07 and that the Commonwealth statute it seeks to enforce must contain such relief in order for the remedy to be adequate for purposes of denying mandamus relief. UTIER cites no authority for this proposition. The proposition is simply wrong. The case law establishes that denial of mandamus relief is appropriate if there is <u>some</u> adequate alternative remedy available, even if the source of the remedy is distinct from the statute sought to be enforced. <u>See, e.g.</u>, <u>In re City of Fall River</u>, 470 F.3d 30, 32-33 (1st Cir. 2006) (denying a writ of mandamus where conventional review of agency action under another statute was available pursuant to the Administrative Procedure Act); <u>Burgos</u> v. <u>Milton</u>, 709 F.2d 1, 3 (1st Cir. 1983) (holding that the district court lacked mandamus jurisdiction in an action against the IRS for damages because the Tucker Act provided the ability to seek adequate relief in the Court of Federal Claims); <u>Guadalupe Pérez</u> v. <u>Saldaña</u>, 133 P.R. Dec. 42, 54-57 (1993) (denying mandamus relief under Puerto Rico law where, among other things, the petitioner, who was asserting a right to University information under the Puerto Rico

- 13 -

Constitution, could pursue an administrative remedy under the policy of the University of Puerto Rico).[9]

The Title III court correctly dismissed the petition for writ of mandamus because UTIER did not demonstrate that there was no adequate alternative remedy available for its members to recover from PREPA.[10]

Affirmed.

---

[9] Because we cannot locate an English translation of Guadalupe Pérez, we rely on a translated copy of the case provided by the FOMB in the addendum to its appellate brief.

[10] Because we agree with the Title III court's holding on this issue, we need not address the FOMB's alternative arguments for dismissal, which the Title III court also did not address.